(No. 22651.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD MATTHEWS, Plaintiff in Error.

*Opinion filed December 20, 1934—Rehearing denied Feb. 7, 1935.*

CHARLES A. BELLOWS, for plaintiff in error.

OTTO KERNER, Attorney General, THOMAS J. COURTNEY, State's Attorney, and J. J. NEIGER, (EDWARD E. WILSON, and HENRY E. SEYFARTH, of counsel,) for the People.

Mr. JUSTICE FARTHING delivered the opinion of the court:

Plaintiff in error, Edward Matthews, also known as Matthew Mioducki, was convicted in the criminal court of Cook county of the crime of robbery with a gun and sentenced to the penitentiary. He has sued out this writ of error to review that judgment.

The first count of the indictment charged that on December 16, 1933, Edward Matthews (hereinafter called the defendant) and Leo Gasior robbed Lillian Herrs of $862,

etc., while they were armed with a pistol. As to the defendant Matthews, the second count alleged a former conviction of larceny in 1925 under the Habitual Criminal act. The third count is in substance the same as the first. The jury disagreed at the first trial. At the second trial Matthews and Gasior were found guilty of the aggravated charge of robbery while armed, etc. The defendants sued out separate writs of error.

The grounds urged for reversal by Matthews are that the evidence is not sufficient to sustain the verdict of the jury; that the trial court erred in improperly restricting the cross-examination of the People's witnesses and in permitting the defendant to be impeached upon an immaterial and irrelevant matter; that the conduct of the trial court and of the State's attorney was prejudicial; that the jury was improperly instructed, and that the defendant's motion to suppress evidence was wrongfully overruled.

The testimony shows that about 8:45 P. M. on December 16, 1933, Lillian Herrs, the cashier of a McLellan store located at 7120 Grand avenue, in the city of Chicago, was robbed of $862. The defendant stood at the rear door of the store and forced Harold Zeiler, a clerk, into the basement, and Birger Johnson, another clerk, to stand with his hands above his head and his back against a wall, while two of the defendant's companions went to a balcony and took $862 from the cashier of the store.

It is argued by the defendant that the case is one of mistaken identity, and that the evidence of identification was insufficient to support the verdict. The two clerks, Zeiler and Johnson, were the only persons who saw this defendant. They had an opportunity to observe him while he was waiting for his companions to return. Zeiler testified that he was in the back of the store and noticed the back door was open. He went to close it and was confronted by a man with a gun. Zeiler was ordered to go down-stairs. He was cautioned to keep his head down, but

he looked at the robber three times, at least. He met the other two men as they left and was ordered to get back down-stairs. The next day Zeiler, and Hurlbert, manager of the McLellan store, were invited to an accessory shop that had just been opened. When they arrived they found a party in progress and were invited to take a drink. The defendant, his wife and his sister, a Mr. Ray Collins and his wife, and a Mr. Bender, were there. When Zeiler was introduced to the defendant as a clerk of the McLellan stores, Matthews started to put up his hand and then said, "I don't know the man," and walked to the back of the store. Zeiler and Hurlbert called the police as soon as they left the party and had the defendant arrested for the robbery of the day before.

Birger Johnson, the other clerk mentioned above, testified he went to the rear door on the evening of the robbery and saw the defendant standing there. He was told to take a look at some boxes just outside the rear door, and as soon as Johnson came within reach, the defendant thrust a gun into the witness' side and told him it was a robbery. Johnson had a good view of the defendant. After the defendant's arrest this witness saw him at the police station the next evening, where he picked him out of a group of persons. In the group at the station were the defendant, his wife, sister, sister-in-law and a man named Bender. He positively identified Matthews as the man who had assisted in the robbery the day before.

Both Zeiler and Johnson testified that the man they saw at the rear of the store was scarred and deeply wrinkled. The defendant bases his contention that he was not properly identified largely on the fact that his face is free from scars and lines. There is no other evidence in the record as to the condition of his face. The fact that the witness Zeiler identified the defendant at the accessory store the day following the robbery and had him arrested as soon as Zeiler left that store is noteworthy. Zeiler was posi-

tive that he had found one of the robbers. The fact that Johnson was not asked to pick the defendant out of a group of suspects in a "show-up" goes to the weight and not to the competency of his testimony. (*People* v. *De-Suno*, 354 Ill. 387; *People* v. *Reilly*, 348 id. 153.) We cannot say that the jury was not warranted in finding the defendant guilty from the testimony shown in the record or that there was a lack of full and complete identification.

The defendant insists that he was restricted in the cross-examination of Harold Zeiler. This witness stated on cross-examination that he had a glimpse of the two men that ran out of the store after the defendant. He stated on cross-examination that he did not remember the description of the clothing the robbers wore. His cross-examination was a matter within the sound discretion of the court. (*People* v. *Jones*, 343 Ill. 291.) The questions had to do with the kind of clothing worn by the robbers and were mere repetition. There was no abuse of the discretion vested in the trial court.

The defendant next contends that the court erred in permitting the State's attorney to cross-examine him on immaterial matters not brought out on direct examination and in pursuing the same line of questioning against his co-defendant, Gasior. On direct examination the defendant denied that he participated in a robbery and testified as to an alibi. The court, over objection of the defendant's counsel, permitted the State's attorney to ask him questions concerning his association with the defendant Gasior. Nothing was asked which tended to incriminate him or show that he was guilty of other crimes, but the questions and the answers given show that he knew Gasior. He denied being personally acquainted with Gasior but admitted that he knew him in a business way. Later the People called a police officer who testified that he had seen the two defendants riding around together shortly before the robbery. Where there is nothing in the questions sug-

gesting that the defendant was an habitual criminal and law-breaker or that he had ever been guilty of any previous crime, even though the cross-examination may have been extended somewhat beyond the scope of the direct examination, the error is not prejudicial. (*People* v. *Jaffe*, 339 Ill. 101.) The latitude of cross-examination of the defendant is largely controlled by the sound discretion of the trial court. (*People* v. *Jones*, 343 Ill. 291.) Evidence of the defendant's association with Gasior immediately before the crime was competent. (*People* v. *Gormach*, 302 Ill. 332; *People* v. *Dale*, 355 id. 330.) The contention that the defendant was impeached on an immaterial point is not well taken.

In his closing argument counsel for the defendant said: "Of course, you know the wife cannot testify either for or against the defendant." The State's attorney objected. Counsel then continued: "I have a right to say the wife cannot testify. The wife is not a competent witness to testify on behalf of the husband.

The court: "You might have offered her, Mr. Bellows.

Mr. Bellows: "I was willing to do that, but you know, your honor, that is incompetent.

The court: "Suppose the State did not object to it.

Mr. Bellows: "She is utterly incompetent.

The court: "I am telling the law. The objection is sustained. You did not offer—the proper method is to offer, then I would instruct the jury she is not a competent witness, if the State objected."

Counsel argues that this was an expression by the trial judge in favor of the People. A correct rule is recognized in *People* v. *McMullen*, 300 Ill. 383, *People* v. *Wilson*, 334 id. 412, *People* v. *Godsey*, 334 id. 11, and *People* v. *Judycki*, 302 id. 143, to the effect that the court must be impartial in the trial of a case, but the colloquy set forth above in no way violated that rule.

The defendant next contends that the court erred in giving an instruction on circumstantial evidence because there was nothing but direct evidence in this record. He asked for a similar instruction, which was refused. There was sufficient circumstantial evidence to justify the court in giving one of these instructions. One of the circumstances in evidence was the conduct of the defendant in refusing to shake hands with Zeiler and in walking away from him after volunteering the statement that he did not know him when the two were introduced in the accessory shop. Another circumstance is the fact that the defendant and Gasior were acquainted before the crime was committed. But we have held that the giving of this stock instruction on circumstantial evidence is not reversible error where the defendant is proved guilty beyond all reasonable doubt, even though the record contains no circumstantial evidence. *People* v. *Fiereto,* 303 Ill. 186.

We have examined the instructions which were refused by the court, and are of the opinion that they were all covered by given instructions and that the court did not err in refusing to give them. *People* v. *Buzan,* 351 Ill. 610.

The defendant's contention that the court erred in overruling his motion to suppress certain evidence obtained by an illegal search of his premises is not tenable. The evidence obtained was a bill of sale, which was shown to the defendant on the trial but never offered in evidence. Under these circumstances the defendant was not prejudiced by the ruling of the court in denying the motion to suppress the evidence.

The record indicates that the defendant received a fair and impartial trial, and the judgment of conviction is affirmed.

*Judgment affirmed.*