(No. 23327.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* RALPH NAKUTIN, Plaintiff in Error.

*Opinion filed October 27, 1936—Rehearing denied Dec. 9, 1936.*

564

Herrick, C. J., and Farthing, J., dissenting.

Wm. Scott Stewart, for plaintiff in error.

Otto Kerner, Attorney General, Thomas J. Courtney, State's Attorney, and A. B. Dennis, (Edward E. Wilson, Richard H. Devine, and John T. Gallagher, of counsel,) for the People.

Per Curiam: A jury in the criminal court of Cook county found Ralph Nakutin guilty of the crime of receiving stolen property and fixed the value of the property at $93. After motions for a new trial and in arrest of judgment were overruled he was sentenced to the penitentiary. He has sued out this writ of error. Present counsel did not try the case below.

The indictment charged that defendant, for his own gain and to prevent the owner from again possessing its property, did buy, receive and aid in concealing certain

linen luncheon sets described, the property of Leacock & Co., Inc., a corporation, knowing that they had been stolen.

Samuel E. Golden testified that he worked for Leacock & Co., Inc., on December 16, 1934; that Robert S. Benepe was president, John, Julian and Lionel Leacock were directors and Frederick H. Grob was treasurer. His salary was paid by Leacock & Co., Inc., by checks signed by its president and treasurer. Leacock & Co., Inc., was an importer of fine linens and laces. Its board of directors met at its New York office. Golden had been its Chicago representative for four years. On December 16, 1934, at 4:00 P. M., he left two sample cases containing linens and laces valued, wholesale, at $474, in his automobile in a public garage. The car was not locked and the next morning the sample cases, linens and laces were gone. He identified People's exhibits 1, 2 and 3 as part of the merchandise that was in the sample cases and said their wholesale value was $93. The first time after December 16, 1934, that he saw these exhibits was on January 21, 1935, at the I. I. Litwinsky store. R. E. Getzelman, president of that concern, and Sergeant O'Connell and Sidney Bayer, were there. Golden visited the defendant's store, at 1552 North Milwaukee avenue, on January 23 but did not talk with defendant. In February, shortly after the indictment was returned, defendant went to Golden's office and said that if Golden would testify that he was not sure that this merchandise was his, defendant would make good the loss and in addition he would pay Golden $300 for his trouble.

Antoinette Getzelman, the wife of R. E. Getzelman, who is president of I. I. Litwinsky, The Linen Store, Incorporated, testified that she went to defendant's store on January 9, 1935, to look for merchandise that had been stolen from Litwinsky. Before entering she looked at baby shoes and slippers in the window. She said she had a conversation with defendant. She asked him about the baby shoes that she had seen in the window, and after he had shown

them to her she decided not to buy them. She spent about two hours in the store and shopped around in the different departments. A clerk showed her some linen tablecloths. Defendant talked to this witness about People's exhibits 1, 2 and 3. He said, "Would you like to buy a tablecloth very cheap, something that is worth a hundred dollars?" She said that defendant did not know her before she went to the store that day and that she gave him her first name and her maiden name. She told him that she had never been in the store before but had shopped in the neighborhood and was attracted by his windows. Defendant offered her the three exhibits for $30 but refused to accept her check. She returned to defendant's store that evening with Bayer, who posed as her son but who was, in fact, an assistant buyer for the Litwinsky store. Next day she came back and bought the three exhibits for $30. She asked defendant how he could sell the goods so cheap, and he told her that there was a syndicate that buys stolen merchandise and that he bought from it. He said, "I have a list of customers that buy my stuff from time to time." She also told defendant that she was the widow of a tobacco planter in South Carolina and that she was visiting in Chicago. She gave him a fictitious address on Belmont avenue. She testified that the fair market value of the articles she purchased from defendant was $93. On cross-examination she admitted that she had guessed that they were worth about that and had been told this was correct. The court refused to permit counsel for defendant to inquire whether this witness had been shown a tablecloth marked defendant's exhibit 3.

Sidney Bayer testified that he went to defendant's store as stated by Mrs. Getzelman. He identified People's exhibits 1, 2 and 3 as the articles which were purchased from defendant. He made his identification by looking at the words "bought by Bayer," which were placed on a tag by Sergeant Harry O'Connell.

Defendant's written motion to instruct the jury to return a verdict of not guilty was overruled.

Defendant testified that he remembered the visit of the witness Getzelman. He stated that she wanted a set of linens which were worth between $200 and $400. He told her he did not handle that kind of merchandise. He denied that he made the sale of the linens which Mrs. Getzelman finally purchased for $30 and insisted that one of the clerks sold them to her. He said he made it a practice to talk to most of his customers, and that he would go from one to another and try to help along the sales. He had no fixed prices and usually a price was reached by bargaining. He denied having a conversation with Mrs. Getzelman about taking a check for merchandise, and also denied having told her that he could sell the linens so cheap because they were stolen and that he bought them from a syndicate. He also denied going to the office of witness Golden and asking him not to identify his goods, in return for his offer to pay for the stolen linens and to pay him $300 for his trouble. He testified further that the linens in question were kept in the front of the store in show-cases in the linen department and that the goods were wrapped by a clerk and sold in the usual manner. He testified that he bought these linens from a jobber named Melmuk. He had bought goods from this same man on previous occasions. He produced a receipted bill for $82.50 from B. Melmuk & Co., a jobber of general merchandise, 531 Elmiro street, San Antonio, Texas, dated December 27, 1934. This invoice covered one job lot of lace linens. He testified that the exhibits were included in the goods covered by the invoice. He paid between nine and ten dollars apiece for the linens. He denied knowing that it was stolen merchandise, and stated that after it was bought the girl put it in stock, and that it was never hidden. He also bought merchandise in job lots, at auction and at fire sales.

Evelyn Ferdinand was one of defendant's clerks. She showed defendant's linens to Mrs. Getzelman, who asked to see something better than defendant had in stock. This witness called defendant over to fix the price of the linens which had been selected by Mrs. Getzelman. There was nothing unusual about this sale.

Morris Parvin had been a general merchandise jobber for twenty-five years. He said that a fair, reasonable jobbing price of one set of the exhibits was from $18 to $20 in January, 1935, and about $13 or $14 in December, 1934. Another exhibit was worth around $10 or $11 in January and $8 or $9 in December. On cross-examination he stated that he could not answer what the retail price would be, because linens are a very peculiar item. They are bought at as low a figure as possible and are sold for as much as can be obtained. Few men who are not manufacturers can tell their value. The retail price of exhibit 1 would depend on where it was sold and who sold it.

Alex Wertheim, a jobber of twenty-five years' experience, testified he was familiar with linen sets. He gave the fair, reasonable market price of People's exhibit 1 during the early part of January, 1935, as $8 or $9 from a jobber and $11 or $12 from a wholesaler, and said that it might retail for about $15 or $16. He said People's exhibit 2 was worth about $4 or $4.50 from a jobber, $5 or $5.25 at wholesale, and that it would retail for $7 or $7.50, depending upon who sold it. On cross-examination he testified that he had never been engaged in importing and selling fancy laces and linens but that he knew an imported piece of merchandise when he saw it. He said that People's exhibits 1 and 2 were imported from China or Japan. He had known defendant for twenty years.

Julius Benjamin, in the linen and dry goods business, could not give an opinion as to the fair, reasonable market value of People's exhibit 1, but said that from $12 to $15 was a fair selling price for People's exhibit 2.

Defendant relies upon the statement in Wharton on Criminal Law (vol. 2, 12th ed. sec. 1239,) to the effect that at common law receiving stolen property from a receiver, in the absence of a conspiracy, was not a receiving from the thief, to support his contention that he is not shown by the evidence here to have received stolen property. But our statute necessarily supersedes the common law, and section 239 of the Criminal Code of 1874 (38 S. H. A. 492; Ill. State Bar Stat. 1935, chap. 38, par. 507, p. 1225;) only requires a receiving with knowledge that the goods were stolen. It does not demand that the goods be received from the thief.

The testimony of Samuel E. Golden as to the loss of the linens would not, alone, have been sufficient to establish that they had been stolen. (*People* v. *Lardner,* 296 Ill. 190.) The facts here differ materially from those in *People* v. *Hein,* 315 Ill. 76, relied upon by the People. There the articles stolen were taken from the complaining witness' locked trunk, which was in her room and not in a public place. The linens Mrs. Antoinette Getzelman bought at defendant's store were identified as part of those Golden left in his automobile. Mrs. Getzelman testified that defendant told her the linens were bought by him from a syndicate which dealt in stolen goods. In *People* v. *Goodwin,* 263 Ill. 99, we said that circumstantial evidence may be used to prove the *corpus delicti* in the same way and to the same extent that it may be used to connect the accused with the commission of an offense, and that "often the facts and circumstances from which the *corpus delicti* is proved are those which connect the accused with the commission of the offense." This testimony warranted the jury in finding that a larceny of the linens had been committed. A careful reading of the testimony of the witness Golden refutes defendant's contention that the linens introduced in evidence were not identified as the property of Golden's employer. While he did not point out any distinguishing

marks, tags or other means of making the identification, he was not cross-examined upon it, and there is no doubt that the linens identified by him were those Mrs. Getzelman said she bought from defendant.

We cannot agree with defendant's contention that the value of the goods in evidence was not established. The testimony as to the value was in sharp conflict. The witness Golden testified, without cross-examination, that the exhibits were worth $93, wholesale. Mrs. Getzelman's testimony as to value was open to criticism, but such criticism goes only to its weight. The question of value was one of fact, and there was evidence from which the jury were warranted in finding the value to be $93.

It is next urged that the corporate existence of Leacock & Co., Inc., was not proved. The ownership of the property is an essential allegation in an indictment for receiving stolen property and must be proved. (*People* v. *Struble,* 275 Ill. 162; *People* v. *Krittenbrink,* 269 id. 244.) The fact need not, however, be shown by the charter or by the articles of incorporation. Proof of user is *prima facie* evidence of the existence of a corporation. (38 S. H. A. 737; Ill. State Bar Stat. 1935, par. 772, p. 1256; *People* v. *Pernalsky,* 334 Ill. 38.) The witness Golden testified that Leacock & Co., Inc., had a board of directors, a president and a secretary and that its board of directors met in New York. This witness was paid by company checks signed by the president and treasurer. The company had done business in Chicago since March of 1931. Section 157.9 of the Business Corporation act of 1933 (Smith's Stat. 1935, p. 809,) requires the corporate name to contain the word "corporation," "company," "incorporated" or "limited," or the abbreviation of one of such words, and paragraph 465 of the Criminal Code (Smith's Stat. 1935, p. 1188,) makes it a criminal offense to assume a corporate name. The foregoing proof of user of a corporate franchise and the use of a name which natural persons are prohibited from using

made a *prima facie* showing that Leacock & Co., Inc., is a corporation. (*People* v. *Dunham*, 344 Ill. 268; *People* v. *Fitzgerald*, 297 id. 264, 268; *People* v. *Buckman*, 279 id. 348.) This contention must therefore be overruled.

Defendant contends that prejudicial error was committed against him when the trial court overruled an objection to an answer given to a question put to Mrs. Getzelman as to what she was looking for when she went to defendant's store. Her answer was that she was looking for merchandise that had been stolen from her husband's store. That answer was objected to, but no motion to strike it or for instruction directing the jury to disregard it was made. The question was proper and there was no objection to it offered. It is to the answer that defendant's counsel objected. The rule often stated by this court, applicable where an improper answer is made to a proper question, requires the party claiming to be injured by such answer to move to strike it or ask an instruction directing the jury to disregard it. If he fails to do either he cannot complain. *People* v. *Carson*, 341 Ill. 11; *People* v. *Nall*, 242 id. 284; *Delahoyde* v. *People*, 212 id. 554; *Chicago, Peoria and St. Louis Railway Co.* v. *Blume*, 137 id. 448; *Montgomery* v. *Black*, 124 id. 57.

The objection that the trial court unduly restricted the cross-examination of Mrs. Getzelman is not well taken. She had stated that she was not interested in the tablecloth marked as defendant's exhibit 3 and that defendant had not told her the price of it. The questions objected to as not being proper cross-examination went to the giving of a price to the witness by defendant. It is true, as defendant's counsel contends, that where a conversation is related by a witness the opposing party has a right to bring out all of the conversation on cross-examination. But the scope of cross-examination is largely within the control of the trial court. (*People* v. *Matthews*, 359 Ill. 171, 175; *Peo-*

*ple* v. *Jones,* 343 id. 291.) That discretion does not appear to have been abused in this instance.

Defendant complains of the action of the trial court in refusing to adopt and give three suggestions in the narrative and connected form of instructions given to the jury. The trial was had on June 28, 1935, at which time section 67 of the Civil Practice act had not been amended. In pointing out what was required to be proved, the court told the jury that "it must be shown beyond a reasonable doubt— (1) that the property has in fact been stolen by a person other than the defendant; (2) that the defendant actually received the property stolen or aided in concealing it; (3) that the defendant knew the property was stolen when he received it or aided in concealing it; (4) that the defendant received or aided in concealing the property stolen for his own gain or to prevent the owner from again possessing it."

The three suggestions of defendant's counsel which were refused, were:

"The court instructs the jury that if from the evidence they find that the goods were treated after delivery the same as all other merchandise in the defendant's place of business, it is a circumstance which negatives guilty knowledge."

"The court instructs the jury that goods received in the usual course of business is a circumstance which negatives guilty knowledge."

"The court instructs the jury that the purchase of the goods at a fair reasonable market value negatives guilty knowledge."

Defendant relies on *People* v. *Grove,* 284 Ill. 429, *People* v. *Brooks,* 340 id. 74, and *People* v. *Knight,* 323 id. 567, to support the proposition that it is proper to instruct the jury on the subject of guilty knowledge. The People contend that by the first suggestion the possession of the linens was singled out and that if given, the instruction would have told the jury that if the defendant treated

these linens as he did other merchandise, this circumstance would, in itself, have negatived guilty knowledge. They also contend that the suggestion omitted all other circumstances tending to connect the defendant with the crime and that all three suggestions would have invaded the province of the jury. They also say that the second and third suggestions assumed facts which were in dispute.

When this case was tried, section 67 of the Civil Practice act required the trial judge to give instructions in a narrative form and to submit the instructions or charge to counsel before the jury was instructed, so that suggestions and objections might be made. Such were made grounds for review, but such grounds were waived if no suggestions or objections were made. The suggestions made by counsel for defendant were phrased as instructions had been written under the earlier procedure. The suggestions offered pointed out certain facts and state that they "negative guilty knowledge." To negative guilty knowledge is to disprove it. These suggestions invaded the province of the jury, who are required to consider all the evidence. (*People* v. *Schullo,* 360 Ill. 580.) The second and third suggestions are so framed as to give the impression that the court considered the facts therein recited as proved though such facts were controverted. Such an instruction is erroneous. (*People* v. *Harvey,* 286 Ill. 593; *People* v. *Novick,* 265 id. 436.) Cases cited and relied upon by defendant do not announce a different rule. In *People* v. *Rubin,* 361 Ill. 311, the use of the expression, "negatives guilty knowledge," must be considered in connection with the record concerning the use made. It was not intended by that language to say that that guilty knowledge was disproved by that expression. A reading of that opinion will disclose that circumstances there recited were treated as "a circumstance tending to negative guilty knowledge" or "tending to show lack of guilty knowledge," (p. 329). Such is the rule announced by that opinion. While the

court in this case might properly have advised the jury of that rule, it was not bound so to do. They were instructed that the People, to convict, must prove guilty knowledge beyond a reasonable doubt.

The defendant was found guilty and the record justifies that finding.

Other errors claimed and not specifically discussed herein are answered by the foregoing holdings.

There is no error in the record requiring reversal of the judgment, and it is affirmed. *Judgment affirmed.*

HERRICK, C. J., and FARTHING, J., dissenting.