THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v*
WILLIAM K. FOSTER, Defendant-Appellant.

Second District    No. 80-921

Opinion filed January 27, 1982.

Mary Robinson, of State Appellate Defender's Office, of Elgin, and Peter B. Nolte, of Rockford, for appellant.

Theodore J. Floro, State's Attorney, of Woodstock (Phyllis J. Perko and Cynthia N. Schneider, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

JUSTICE UNVERZAGT delivered the opinion of the court:

Defendant, William K. Foster, was charged by information with one count of burglary, home invasion and attempt rape (Ill. Rev. Stat. 1979, ch. 38, pars. 19—1(a), 12—11(a)(2), 11—1(a), and 8—4(a)). After a jury trial, he was found guilty of each offense. The State nolle prossed the burglary count, and the court entered judgment against the defendant on home invasion and attempt rape. Defendant was sentenced to 10 years in the Department of Corrections. He appeals, contending that the trial court erred (1) in instructing the jury as to both home invasion and attempt rape, (2) in admitting certain items into evidence and, (3) in failing to grant defendant's motion for a mistrial alleging that a statement made by a prosecution witness was prejudicial.

The evidence adduced at trial revealed that at 2 a.m. on June 29, 1980, a man wearing a yellow tank-top T-shirt, a pair of jeans and brown laced boots entered the residence of David Rezab, went into the basement, and found 15-year-old Dawn Rezab there. He asked whether her father was home. When she replied that he was asleep and got up from her chair to go wake her father, he pushed her back down, put one hand over her mouth, pressed down on her throat with the other, and told her he was going to rape her. She began to scratch, kick and scream, awakening her father who came down to the basement and asked what was going on. The man released Dawn, pushed Rezab and wrestled with him while Dawn proceeded to call the police. The intruder then broke from Rezab's grasp and ran out of the house.

Later that morning, a car matching the description of one observed earlier by a neighbor of the Rezabs was seen by an Algonquin police officer. It was parked at an Arco station at the corner of Routes 31 and 62 in Algonquin, and the occupant appeared to make furtive gestures. When back-up officers arrived and approached the car, they found William

Foster, the defendant, lying on the floor as though he was hiding, although defendant stated that he had been fishing. The police noticed that defendant had alcohol on his breath, and they observed a beer can in the car. The defendant was not wearing a shirt, but a yellow tank-top T-shirt, stained and wet with perspiration, was found in the car. He had scratches on his back and was wearing brown laced boots which were wet and had grass sticking to them. The Rezabs separately picked defendant's photo out of a group of seven in a photo lineup.

In August, defendant was also placed in a lineup of five people. Dawn narrowed her identification down to two numbers in the lineup and finally stated she would probably identify No. 1 as the perpetrator if she had to testify in court. Her father identified No. 5; the defendant was person No. 4. Mr. Rezab testified that defendant had had a haircut, had shaved his mustache, and did not wear his glasses at the lineup. Officer Schinkel of the Algonquin Police Department testified concerning the Rezabs' failure to identify the defendant at the lineup. The following colloquy ensued:

"[Defendant's attorney, Kelly]: But when asked whether she [Dawn] would testify, didn't she testify that someone was the other person [person no. 1]?

[Officer Schinkel]: You'd have to see the line-up. It was very bad. He changed his appearance quite a bit.

Q: You were conducting it, were you not?

A: I did not conduct it.

Q: You were there, were you not?

A: Rolling Meadows Police Department conducted it.

MR. KELLY: Judge, I'm going to object. Wasn't responsive. I move it be stricken.

THE COURT: Sustained. Disregard it. Jury strike it."

In chambers, defendant then unsuccessfully sought a mistrial due to this remark. At the close of the State's case, the court admitted into evidence a yellow tank-top T-shirt which was found in defendant's car and a pair of brown laced boots which defendant had worn at the time of his arrest.

At the close of defendant's case, the court instructed the jury as to attempt and rape (Illinois Pattern Jury Instructions, Criminal, Nos. 6.05 and 9.01 (1968) (hereinafter IPI)), but did not delineate the issues in attempt. (IPI Criminal No. 6.07.) IPI Criminal, No. 11.21 (2d ed. 1981), which now defines the offense of home invasion, was not available at the time of defendant's trial. This definitional instruction was given:

"A person who is not a police officer acting in the line of duty commits home invasion when, without authority, he knowingly enters a dwelling place of another when he knew or had reason to

know that one or more persons is present, and threatens the imminent use of force upon any person within such dwelling place whether or not injury occurs, or intentionally causes any injury to any person or persons within such dwelling."

No objection to this instruction was interposed by the defendant. Likewise, the issues instruction, IPI Criminal No. 11.22, was not then available, and the following instruction was given, this time over defendant's objection that it "[d]oesn't make the findings that are necessary for there to be a home invasion":

"To sustain the charge of Home Invasion, the State must prove the following propositions:

First: That the defendant knowingly entered the building of David Rezab, located at 604 Scott Street, Algonquin, Illinois;

Second: That the defendant knew or had reason to know that one or more persons were present in the home at the time;

Third: That the defendant did so without authority;

Fourth: That the defendant threatened the imminent use of force upon any person within such dwelling place whether or not injury occurred or intentionally caused any injury to any person or persons within such dwelling.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, then you should find the defendant guilty.

If, on the other hand, you find from your consideration of all the evidence that any of these propositions has not been proved beyond a reasonable doubt, then you should find the defendant not guilty."

The trial court also gave a general instruction informing the jury that the defendant is presumed innocent, and that the State must prove the defendant guilty beyond a reasonable doubt.

Defendant initially contends that the instructions to the jury defining home invasion and delineating the issues of that crime were misstated because both instructions permitted the jury to find the defendant could be found guilty based on a finding that he had threatened the imminent use of force, absent a finding that he had done so while armed with a dangerous weapon. Defendant characterizes the error as more than "a mere technical defect"; he asserts the inclusion of the dangerous weapon element was essential for the jury to make a legally permissible determination of the defendant's guilt or innocence of the charge of home invasion. (*People v. Stromblad* (1978), 74 Ill. 2d 35.) However, the record reveals that the defendant failed to object to the trial court's definition of home invasion. Although defendant did point out that the issues instructions did not "make the necessary findings for there to be a home

invasion," he neither tendered a correct instruction nor preserved the error by including it in his post-trial motion.

It is well established that failure to object at trial to an asserted error in jury instructions waives the question. (*People v. Tannenbaum* (1980), 82 Ill. 2d 177; *People v. Roberts* (1979), 75 Ill. 2d 1.) Additionally, failure to tender a proper instruction and to raise the error in a post-trial motion effectively waives the issue for appellate review. (*People v. Masini* (1979), 78 Ill. 2d 17; *People v. Foster* (1979), 76 Ill. 2d 365.) A limited exception to the waiver rule is contained in Supreme Court Rule 451(c) which permits the review of "substantial defects" in instructions "if the interests of justice require." (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c).) However, that exception is limited to the correction of "grave errors," or is to be applied where the case is close factually and fundamental fairness requires that the jury be properly instructed. *People v. Ogunsola* (1981), 87 Ill. 2d 216.

Section 12—11 of the Criminal Code of 1961 (Ill. Rev. Stat. 1979, ch. 38, par. 12—11) provides:

"(a) A person who is not a peace officer acting in the line of duty commits home invasion when without authority he or she knowingly enters the dwelling place of another when he or she knows or has reason to know that one or more persons is present and

(1) While armed with a dangerous weapon uses force or threatens the imminent use of force upon any person or persons within such dwelling place whether or not injury occurs, or

(2) Intentionally causes any injury to any person or persons within such dwelling place."

■■■ We observe that the offense is stated in the alternative; that is, the offense of home invasion may be committed either by using or threatening the imminent use of force while armed with a dangerous weapon, or by intentionally causing any injury to a person when the offender enters a residence and knows that a person or persons is in the house at that time. Reference to the current IPI issues instruction on home invasion clearly indicates a defendant may be convicted of the offense upon proof of either the elements stated in section 12—11(a)(1) or those set forth in section 12—11(a)(2). (IPI Criminal No. 11.22; Ill. Rev. Stat. 1979, ch. 38, par. 12—11(a)(1), (a)(2).) The information filed against the defendant for home invasion was not stated in the alternative; it specifically charged the defendant "intentionally caused injury to Dawn Rezab." Thus, in our view, the instruction did not omit any element essential to a determination of the defendant's guilt or innocence of the offense of home invasion as charged; rather, the jury was over-instructed by also being partially instructed on the alternative means of committing the offense. Such variances between the type of the offense specified in the information or

indictment and the types described in the instructions given to the jury have been held not to vitiate a conviction unless the variance was of such a character as to mislead the defendant in his defense or expose him to double jeopardy. (*People v. Rosochacki* (1969), 41 Ill. 2d 483, 492.) The variance here had neither effect. Defendant's primary defense to the charge was unrelated to the method whereby the offense was effectuated; rather, the thrust of his defense was to attack the witnesses' identification of him as the perpetrator. There was not any evidence that he used a dangerous weapon during the commission of the offense, and his conviction under the instant set of facts would bar any further prosecution for home invasion. Consequently, the defendant's conviction has not been vitiated by the variance. Clearly there was ample evidence presented to the jury to permit it to find the defendant guilty of home invasion beyond a reasonable doubt. A recent case has construed the "injury" necessary to sustain a conviction under the home invasion statute. In *People v. Bitner* (1980), 89 Ill. App. 3d 1106, 1112, which held that battery is a lesser-included offense of home invasion, it was stated:

> "To have committed a home invasion, defendant had to have caused an injury to a person or persons within the dwelling. While injury and bodily harm are not identical, it is clear that to cause an injury within the meaning of the home-invasion statute, one must cause bodily harm, thus committing a battery. Thus, whenever a person violates the home-invasion statute, he simultaneously commits a battery."

Although there was no apparent visible injury to the victim in the case at bar, such visible evidence is not necessary in order for a battery to have occurred. It was stated in *People v. Choate* (1979), 71 Ill. App. 3d 267, 276, that:

> "In order to establish 'bodily harm' in a battery case, there is no requirement that the evidence demonstrate a visible injury such as bruising, scratching, or bleeding * * *." Accord, *People v. McEvoy* (1975), 33 Ill. App. 3d 409, 411; see also *People v. Claudio* (1973), 13 Ill. App. 3d 537, 540.

■■ In the instant case, the evidence clearly showed the defendant pushed Dawn down into the chair, and had his hand around her throat while she struggled with him. Clearly this contact caused injury; thus, it was sufficient to sustain the defendant's conviction under the home invasion statute. The jury was properly instructed on the alternative way in which the crime could have been committed and for which there was ample evidence. In view of the insufficiency of the defendant's objection to the instruction, failure to tender a proper one, and failure to raise the issue in his post-trial motion, we do not believe a substantial defect is evident

under the facts of this case, nor that the interests of justice require review pursuant to Supreme Court Rule 451(c) (Ill. Rev. Stat. 1979, ch. 110A, par. 451(c)).

Defendant next contends that the trial court erred in failing to instruct the jury as to the issues of attempt rape, notwithstanding the fact they were given separate definitional instructions on the offenses of attempt and rape. (IPI Criminal Nos. 6.07, 6.05 and 9.01.) He argues that because the issues instruction for attempt was not given, the jury was not properly apprised of the issues of attempt rape, and was unsure as to which elements of the offense it had to find beyond a reasonable doubt. He cites *People v. Davis* (1966), 74 Ill. App. 2d 450, as lending support to his contention of error. The defendant in that case was charged with attempt robbery and, unlike the case at bar, the jury there received no instruction whatever on the offense of robbery, thus effectively requiring it to speculate entirely on its own as to the essential elements of that offense. The record reveals that defendant here failed to offer the court an instruction on the issues of attempt rape, and also failed to raise it in his post-trial motion. Accordingly, the same waiver rules and exceptions discussed above apply.

In *People v. Jones* (1972), 6 Ill. App. 3d 669, 682, *aff'd* (1975), 60 Ill. 2d 300, the trial court failed to give an instruction delineating the elements of rape although it had given the definitional instruction of rape. The court initially noted that in *People v. Davis* (1966), 74 Ill. App. 2d 450, the court was faced with a situation where the trial court instructed the jury as to the definition of attempt and no more. The *Jones* court then found that the trial court's failure to give the instruction as to the elements of rape was not an error of the same gravity as the error in *Davis*. It remarked:

> "In this case, the defendants did not tender additional instructions. While it might have been better for the court to have instructed more specifically on the elements of the offenses charged, we do not find that the failure of the trial court so to instruct was prejudicial error. 'Where the instructions, as a whole, inform the jury of the facts which are essential to the proof of the commission of a specific crime, an error in giving an instruction will not be considered so prejudicial as to warrant a reversal.' [Citation.]" 6 Ill. App. 3d 669, 683.

■■ In the case at bar, the trial court gave the general instruction as to defendant's presumption of innocence and the State's burden to prove the defendant guilty beyond a reasonable doubt throughout the case. (IPI Criminal No. 2.03.) It defined both the offenses of attempt and rape for the jury. We believe these instructions adequately apprised the jury of the elements of the offense charged, and the presumptions and burdens of the respective parties. The evidence adduced at trial clearly showed that the

defendant entered the Rezab residence, announced his intent to rape Dawn, ordered her to lift her nightgown, and proceeded to struggle with her in an effort to rape her. This case is not so close factually as to require this court to invoke Supreme Court Rule 451(c). Accordingly, defendant has waived this issue on appeal.

Defendant's next contention is that the trial court erred in admitting into evidence People's exhibits Nos. 19 and 20, a yellow tank-top and a pair of boots, respectively, which were both taken from defendant's possession upon his arrest. Defendant argues that although the exhibits belong to him, there was no evidence introduced at trial establishing that the person who had committed the crime wore that shirt or one like it or those boots or a pair similar to them. Defendant failed to object to the admission of these items into evidence, and did not include the issue in his post-trial motion. It is well settled that when a defendant fails to make a timely objection at trial or in the post-trial motion, alleged errors occurring during the course of the trial complained of on review are ordinarily deemed waived. (*People v. Jackson* (1981), 84 Ill. 2d 350, 358.) Nevertheless, Supreme Court Rule 615(a) provides:

"Plain errors or defects affecting substantial rights may be noticed although they are not brought to the attention of the trial court." Ill. Rev. Stat. 1979, ch. 110A, par. 615(a).

■■ Before plain error can be considered as a means of circumventing the general waiver rule, it must be plainly apparent from the record that an error affecting substantial rights was committed or that the evidence was closely balanced. (*People v. Jackson* (1981), 84 Ill. 2d 350, 359-60; *People v. Carlson* (1980), 79 Ill. 2d 564, 576.) It does not appear here that the alleged errors have affected defendant's substantial rights. (See *People v. Noascono* (1980), 80 Ill. App. 3d 921.) In the case at bar, the defense relied upon was that defendant had not committed these offenses. Both Dawn and David Rezab testified at trial that the person entering the home wore a yellow tank-top and brown laced boots. Officer Schinkel testified that defendant's yellow tank-top shirt was found in the back seat of his car, and was moist with perspiration. Defendant's boots were wet and had grass sticking to them. Additionally, a neighbor of the Rezabs directed the officers to foot prints in the lawn around his house. These prints belonged to a person wearing a boot 11 inches long. The boots found on defendant were 11 inches long. Both Dawn and David Rezab positively identified the defendant at trial and picked his photo from a group of seven. Although neither victim identified defendant at the pretrial lineup, there was evidence that defendant had substantially altered his appearance. We determine that this case is not so close factually as to invoke Supreme Court Rule 615(a). Moreover, the failure of the witnesses to describe in more detail the yellow tank-top or the boots was a matter for argument to

the jury rather than a bar to their admissibility. See *People v. Moody* (1979), 75 Ill. App. 3d 674.

■■ Defendant's final contention is that the trial court erred in denying defendant's motion for a mistrial, based upon Lieutenant Schinkel's statement that defendant stood in a lineup conducted by the Rolling Meadows Police Department two months after his arrest. Defendant properly preserved this issue for appeal. Evidence suggesting or inferring defendant's complicity in other crimes is clearly inadmissible and prejudicial. (*People v. Curry* (1975), 25 Ill. App. 3d 637.) However, where the competent evidence shows beyond a reasonable doubt that a defendant is guilty, an error in the admission of evidence of other offenses does not call for reversal when the jury could not have reasonably found defendant not guilty. (*People v. Tranowski* (1960), 20 Ill. 2d 11; *People v. Arbuckle* (1979), 75 Ill. App. 3d 826.) Although the jury could have inferred from Schinkel's statement that the Rolling Meadows Police Department conducted the lineup because they were holding defendant for another crime, the nonresponsiveness of the officer's statement could likewise have merely confused the jury, or it simply may have inferred that the defendant had been apprehended and was in custody in Rolling Meadows for the instant offenses. In our view, the evidence against the defendant was so overwhelming that we must conclude the jury could not reasonably have found the defendant not guilty and reversal is not warranted.

For the reasons expressed above, the judgment of the circuit court of McHenry County is affirmed.

Judgment affirmed.

SEIDENFELD, P. J., and REINHARD, J., concur.