THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. JOHN SHELTON *et al.*, Defendants-Appellants.

First District (1st Division) No. 82—1422

Opinion filed December 2, 1985.—Modified on denial of rehearing March 10, 1986.

James J. Doherty, Public Defender, of Chicago (Karen S. Szpajer, Assistant Public Defender, of counsel), for appellants.

Richard M. Daley, State's Attorney, of Chicago (Michael E. Shabat and Marie Quinlivan, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

Following a jury trial, defendants, John and Derryl Shelton, were found guilty of aggravated battery and armed violence. Derryl Shelton was sentenced to five years' imprisonment. John Shelton was sentenced to three years' probation conditioned on six months' imprisonment. On appeal, both defendants contend that (1) the trial court erred in refusing to submit a self-defense instruction to the jury; (2) the jury was improperly instructed on the law of accountability and on the

weight to be given defendants' testimony; (3) the hearsay testimony of the arresting officer should have been excluded; (4) the cross-examination of a State witness concerning her sexual relationship with the victim was improperly restricted; and (5) improper statements during closing argument and misconduct by the prosecutor denied defendants a fair trial. Defendant John Shelton alone appeals from his sentence.

At trial, Kevin Golar, the victim, and Denise West, his girlfriend, gave substantially the same testimony. On May 6, 1981, at about 6:30 p.m., Golar and West went to a liquor store. While in the store, West had a conversation with defendant Derryl Shelton, whom she had once dated. After they left the store, Golar asked West what the defendant had said to her. West stated that the defendant called her a prostitute. Golar was angered by the remark and followed the defendant. An argument developed outside the liquor store between Golar and the defendant. Golar slapped the defendant in the face with his open hand and the defendant ran away. Golar then walked with West to her home. A few minutes after they arrived at the home, Golar heard West's daughter and a playmate screaming and went out on the porch to see what was wrong. The defendants were standing on the sidewalk. Defendant John Shelton held a baseball bat in his hand. Defendant Derryl Shelton had a crowbar in his hand and a six-inch kitchen knife in his back pants pocket. The defendants approached the porch with their weapons raised in the air, while stating to Golar that they were going to kill him. Golar started down the porch stairs, picked up a bicycle, and held it over his head to protect himself. The defendants began swinging their weapons at Golar's head. Golar backed away onto a neighbor's front lawn fending off the defendants' blows with the bicycle he was holding. Defendant John Shelton picked up another bicycle which was lying on the ground and threw it at Golar. The blow knocked Golar backwards into some bushes. He threw the bike off himself and started to get up but lost his balance and once again fell to the ground. Defendant Derryl Shelton then took the knife out of his pocket and stabbed Golar.

Defendants testified to a substantially different version of the facts. Derryl Shelton testified that he was standing outside a liquor store on the evening of May 6, 1981, when he saw Denise West, his former girlfriend, with Kevin Golar. Defendant stated that West approached him and asked when they were going to resume their relationship. Defendant told West that he did not want to resume the relationship because of a conversation he had with Kevin Golar a couple of days previous. Golar then came out of the liquor store and asked defendant what he was doing with West. An argument developed be-

tween Golar and defendant. Golar grabbed defendant by the shoulder, punched him in the face twice, knocked him to the ground, and then repeatedly kicked him in the stomach and side. Defendant escaped and went home. Later, defendant decided that he should go to West's house to find out why Golar was angry with him. He took with him a six-inch kitchen knife. On the way to West's home, he met his brother, defendant John Shelton, and told him to come along. When they arrived at West's home, defendants rang the doorbell and then backed down the steps. Kevin Golar came out of the house, picked up a bicycle and advanced on the defendants. West tried to break up the quarrel. Golar, however, continued to charge at the defendants. Defendant, Derryl Shelton, reached into his back pocket and took the knife out and extended it in Golar's direction. Golar ran directly into the knife and suffered a stab wound in his abdomen. Defendant testified that he did not intend to stab Golar.

At the instructions conference following the close of the evidence, the defendants requested that a self-defense instruction be submitted to the jury. The trial court denied the request. The court held that since the defendants, armed with a six-inch knife, sought out the victim, they were the aggressors. Further, the court stated that defendant Derryl Shelton's testimony indicated that the stabbing was accidental, which would be inconsistent with a defense of self-defense.

Defendant's first argument on appeal is that the trial court erred in refusing to instruct the jury on self-defense since self-defense was a factual issue for the jury to determine. Defendants contend that the evidence was sharply conflicting on the issue of whether defendant Derryl Shelton was the aggressor in the quarrel with the victim or whether it was an accidental stabbing.

■ A defendant charged with a violent crime, such as murder or aggravated battery, cannot simultaneously rely upon the defenses of justifiable use of force and accidental use of force. (*People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403.) This court explained the rationale for this rule in *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461, as follows:

> "By its very nature self-defense, whether reasonable or not, relates to the intentional or knowing use of force and not to an accidental shooting. If defendant acted in what he believed to be self-defense, he must have fired the weapon intentionally or knowingly. If the gun was accidentally discharged, all questions of self-defense are out of the case." 95 Ill. App. 3d 886, 893, 420 N.E.2d 461, 467.

■ We agree with the defendants that the question of whether a

defendant reasonably believed he needed to use deadly force to repel an imminent unlawful attack is a question of fact which should be determined by the jury. (*People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.) The question, however, of whether a party in a criminal case has introduced evidence sufficient to support a finding on a particular factual issue is a question of law to be resolved by the trial court. *People v. Woods* (1980), 81 Ill. 2d 537, 410 N.E.2d 866.

■ In the instant case, defendant Derryl Shelton testified that he pulled a knife out of his back pocket and the victim accidentally "walked into the knife." He further testified that he did not intend to stab the victim. Thus, since it was defendant's position at trial that the stabbing was accidental, he cannot also argue that it was in self-defense. (*People v. Tanthorey* (1949), 404 Ill. 520, 89 N.E.2d 403; *People v. Purrazzo* (1981), 95 Ill. App. 3d 886, 420 N.E.2d 461.) Further, the victim and Denise West both testified that the defendants came to West's home armed with various weapons. The defendants themselves testified that Derryl Shelton was armed with a six-inch knife. Our review of this evidence leads us to conclude the trial court was correct in its determination that the defendants were the aggressors in the altercation which led to the stabbing of the victim. Since the defendants were the aggressors they cannot rely upon the affirmative defense of justifiable use of force. Ill. Rev. Stat. 1979, ch. 38, par. 7—1; *People v. Walker* (1978), 58 Ill. App. 3d 535, 374 N.E.2d 880.

■ Defendant calls our attention to the recent decision of this court in *People v. Brooks* (1985), 130 Ill. App. 3d 747, 474 N.E.2d 1287. In *Brooks*, the complaining witnesses testified that the defendant walked up to a truck they were in and opened fire with a gun. The defendant testified that a shooting occurred over a struggle with a gun, after defendant's stepson attempted to shoot defendant from a truck as defendant walked on the street. The defendant's testimony was corroborated both by medical evidence regarding the entry point of the wounds sustained by a passenger in the vehicle and the passenger's testimony. The court held that, based on the evidence presented, the preceding events could place the shooting in the context of self-defense and, therefore, a self-defense instruction was required. We do not believe the preceding events in the case at bar require a similar instruction. The defendants, by their own testimony, sought out the victim at the home of his girlfriend armed with a six-inch kitchen knife. No additional evidence was presented on the issue of self-defense. We agree with the finding of the trial court, that on the basis of defendants' testimony, a self-defense instruction was not required.

Defendants next contend that the jury received improper instruc-

tions on the law of accountability. Following oral argument in this matter, a supplemental record was filed by the State which amended the record to reflect that the jury received the appropriate instructions on accountability.

■ Defendants further argue that the jury received improper instructions on the weight to be given statements by defendants. At trial, Officer Swich and an assistant State's Attorney testified that the defendants made certain incriminating statements to them at the police station following the stabbing of the victim. The defendants denied making the statements. The standard instruction on statements by defendants reads as follows:

> "You have before you evidence that the defendants made statements relating to the offenses charged in the information. It is for you to determine whether the defendants made the statements, and, if so, what weight should be given to the statements. In determining the weight to be given to a statement, you should consider all of the circumstances under which it was made." (Illinois Pattern Jury Instructions (IPI), Criminal, No. 3.06—3.07 (2d ed. 1981).)

The version of the above instruction which was submitted to the jury here omitted the language "it is for you to determine whether defendants made the statements." This modified version of the instruction was submitted by the State at the instructions conference and was not objected to by the defendants either at the instructions conference or in their motion for a new trial. We find that defendants' failure to object at trial to the error in the instructions and the failure to raise the error in their motion for a new trial waives the issue on review. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

■ Defendants further argue that the omission of the language from the instruction constituted plain error and was an exception to the waiver rule. In *Huckstead*, the court held that the plain error exception to the waiver rule is limited "to the correction of 'grave errors' [citations] or to situations where the case is close factually and fundamental fairness requires that the jury be properly instructed." (*People v. Huckstead* (1982), 91 Ill. 2d 536, 544, 440 N.E.2d 1248, 1252.) In the case at bar, it is our opinion that the deletion of the language from the instruction did not constitute plain error. We note that the jury received an instruction (IPI Criminal 2d No. 1.02), which provided that they could choose to reject the testimony of any witness, including those who testified that the defendants made certain incriminating statements. Thus, the principle of law involved was covered accurately and sufficiently by another instruction. See *People v. Benson* (1979), 71

Ill. App. 3d 591, 390 N.E.2d 113; *People v. Boose* (1978), 65 Ill. App. 3d 127, 382 N.E.2d 532.

■ Defendants next contend that the trial court erred by permitting the State to introduce into evidence an out-of-court conversation which transpired between the arresting officer and the victim. It is well established that where a conversation is related by a witness, the opposing party has a right to bring out all of the conversation. (*People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255; *People v. Nakutin* (1936), 364 Ill. 563, 5 N.E.2d 78.) In the instant case, Officer Jefferson testified at trial that he had a conversation with the victim following the stabbing. On cross-examination, defense counsel inquired into the details of that conversation. Defense counsel asked Officer Jefferson if he knew which of the defendants to arrest after speaking with the victim. Officer Jefferson responded that he was unsure. On redirect examination, the State inquired of Officer Jefferson what particular statements the victim had made. Officer Jefferson responded that the victim identified defendant, Derryl Shelton, as the person who stabbed him. Since the defendants first elicited certain portions of the conversation between Officer Jefferson and the victim, the trial court properly permitted the State to introduce other parts of that conversation. *People v. Weaver* (1982), 92 Ill. 2d 545, 442 N.E.2d 255; *People v. Nakutin* (1936), 364 Ill. 563, 5 N.E.2d 78.

■ Defendants further argue that the trial court's ruling preventing defendants from cross-examining Denise West concerning her sexual relationship with the victim was error. The defendants argue that the restriction of their cross-examination of West precluded them from providing the jury with the motive and bias West might have had to testify falsely.

Generally, a relationship a witness might have to the victim of a crime is a proper subject for cross-examination to show the witness' possible bias. (*People v. Coles* (1979), 74 Ill. 2d 393, 385 N.E.2d 694.) The trial court, however, has discretion to limit the scope of examination where the examiner is attempting to show the possible bias of a witness, particularly where the probative value of the evidence sought is substantially outweighed by its prejudicial effect, or where the examination is intended to embarrass the witness. (*People v. Sparkman* (1979), 68 Ill. App. 3d 865, 386 N.E.2d 346.) In the instant case, the jury was aware that West was romantically linked to the victim since the victim had previously testified that he had been dating West for a period of time. We believe the court soundly exercised its discretion in limiting the cross-examination of West since the probative value of evidence sought was substantially outweighed by the embarrassment it

would cause the witness. *People v. Sparkman* (1979), 68 Ill. App. 3d 865, 386 N.E.2d 346.

■ Defendants next contend that the misconduct on the part of the prosecutors resulted in error where the prosecutors elicited testimony from witnesses which had the effect of creating sympathy for the victim and prejudicing the defendants in the eyes of the jury. This included testimony from the victim that he had been honorably discharged from the army and as to his pain and suffering following the stabbing, testimony from Denise West that she had been frightened and threatened by the defendants following the stabbing, and questioning of defendant, John Shelton, attempting to impeach him with prior inconsistent statements.

In order for error to be brought to the attention of a reviewing court, it must be preserved. (*People v. Mathes* (1981), 101 Ill. App. 3d 205, 427 N.E.2d 1269.) Error is preserved by objection at the proper time at trial and by filing of a post-trial motion which includes the error alleged as a ground for reversal. (*People v. Dimond* (1977), 54 Ill. App. 3d 1036, 370 N.E.2d 686.) Issues not presented to the trial court in a motion for a new trial are waived on appeal. (*People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248; *People v. Foster* (1982), 103 Ill. App. 3d 372, 431 N.E.2d 430.) The record here establishes that defendants did not object to any of the above cited testimony in his motion for a new trial, and thus waived consideration of it on appeal. *People v. Huckstead* (1982), 91 Ill. 2d 536, 440 N.E.2d 1248.

■ Moreover, in reviewing the testimony complained of, we find no abuse of discretion on the part of the trial court in allowing the testimony as evidence. The testimony concerning the victim's honorable discharge from the army was relevant background information for the jury to consider in determining the credibility of the witness. The victim's status as a veteran, who had received combat training, was probative of a determination of the defendant's asserting that the victim has walked into a six-inch knife.

■ Similarly, the victim's testimony about his bodily pain and suffering was relevant to the charge of aggravated battery against defendants. An essential element of the crime of aggravated battery is that the battery caused the victim great bodily harm or permanent disability. (*People v. Nard* (1975), 32 Ill. App. 3d 634, 335 N.E.2d 790.) Where a defendant is charged with aggravated battery, proof of the nature and seriousness of the victim's injury is relevant testimony.

■ The testimony of Denise West as to the defendants' unexplained visit to her home was relevant to the issue of defendant's guilt. At trial, West testified that the defendants, who knew West would be a

witness against them at trial, came to her home the day after the stabbing for an unexplained reason. It could be inferred from this testimony that defendants went to West's home to influence or intimidate her, and this testimony would be probative of defendants' guilt. See *People v. Wilson* (1980), 87 Ill. App. 3d 693, 409 N.E.2d 344.

■ Further, we find no prejudice was sustained by defendants where defendant, John Shelton, was asked on cross-examination whether the State's witnesses and his attorney were lying. The arresting officer testified that defendant had told him that he carried a stick with him as he went to West's house in search of the victim. The State's Attorney had testified that, upon reaching West's home, defendants called for the victim to come out of the house. On cross-examination, he denied both carrying a stick and calling out to the victim. He was then asked whether the prosecutor and police officer had lied in their testimony. After reviewing this testimony, we find it was a permissible attempt at impeachment of defendant by prior inconsistent statements.

■ Defendants next contend that the impact of several statements made by the prosecutor during closing argument denied him a fair trial. Defendants initially complain that the prosecutor improperly commented on defendant John Shelton's demeanor while on the witness stand. During his cross-examination by the prosecutor, John Shelton was asked if he thought there was something funny about the victim's injuries. This question was apparently prompted by a smile that crossed defendant's face as he testified. The prosecutor later made reference in his closing argument to the fact that defendant was smiling or laughing while he testified. We believe this was within the bounds of permissible comment since the defendant was smiling as he testified and his facial expression thus became evidence upon which the prosecutor could comment during closing argument. See *People v. Smothers* (1971), 2 Ill. App. 3d 513, 276 N.E.2d 427.

■ Defendant further claims prejudice resulted where the prosecutor misstated both the evidence and the law during closing argument and attacked the integrity of defense counsel. It is well settled that a defendant waives any alleged prejudice resulting from prosecutorial closing arguments, unless he objects to arguments when they are made and includes them in his motion for a new trial. (*People v. Fuller* (1980), 91 Ill. App. 3d 922, 415 N.E.2d 502.) Our review of the record shows that the defendants did not object to the complained of comments when they were made nor did defendants include any reference to them in their motion for a new trial. Defendants, therefore, have waived their right to claim prejudice as a consequence of these com-

ments. *People v. Link* (1981), 100 Ill. App. 3d 1000, 427 N.E.2d 589.

■■ Finally, defendant John Shelton alone appeals from his sentence of three years' probation, conditioned upon six months' imprisonment. John Shelton was convicted of aggravated battery, a Class 3 felony. We note that the sentence imposed is in excess of the statutory maximum, which allows that the period of probation for a Class 3 felony shall not exceed 30 months. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—2(b)(2).) We hereby vacate the sentence of the trial court and order that John Shelton be sentenced to six months' imprisonment and 30 months' probation.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed. The sentence of defendant John Shelton is vacated and modified.

Judgment affirmed; sentence of defendant John Shelton vacated and modified.

BUCKLEY, P.J., and O'CONNOR, J., concur.