THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ALBERT BENSON, Defendant-Appellant.
First District (1st Division)   No. 78-40

Opinion filed April 30, 1979.

James J. Doherty, Public Defender, of Chicago, (Michael J. Morrissey and Ronald P. Katz, Assistant Public Defenders, of counsel), for appellant.

592

Bernard Carey, State's Attorney, of Chicago (Marcia B. Orr, Mary Ellen Dienes, and Dale F. Weigand, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE CAMPELL delivered the opinion of the court:

The defendant, Albert Benson, was charged by indictment with the offense of armed robbery. (Ill. Rev. Stat. 1975, ch. 38, par. 18—2.) Defendant was found guilty by a jury and was sentenced to a term of four to six years in the penitentiary. Defendant appeals from this conviction, contending that it was reversible error for the trial court to refuse his proposed jury instruction on identification.

At trial, the complaining witness, Marshall Williams, testified that on March 30, 1975, he was working, as a crew chief, at a McDonald's restaurant, located at 1433 North Larrabee Street in Chicago, and that he was responsible for the cash register money. At approximately 9:30 a.m., defendant, Eddie Rufus, and a third individual entered the restaurant. The complainant recognized Eddie Rufus because Rufus had previously worked under his supervision at McDonald's. He admitted that he did not know the names of the other two men, although he had seen them previously in the restaurant and in the neighborhood many times. At this time, Rufus placed an order. While the complainant went back to the grill to fill this order, he heard the restaurant's four cash registers being opened. Because of this, he returned to the front in order to see what was taking place. When the complaining witness was approximately 10 feet away from the front counter, he observed defendant and a third person going into the cash registers. The latter had a sawed-off shotgun in his coat, which was pointed at the complaining witness, and defendant held an open jackknife. After they took the money out of the registers, the three men left the restaurant and fled across the street into the Cabrini-Green housing project. At this point, the complainant telephoned the police.

The police arrived between 2 and 3 minutes later. One of the police officers that responded was Officer Robert Fromel. He testified that the complaining witness informed him that he had been robbed by three men and that two of the men were armed. The complainant also gave him a description of the offenders and indicated that the name of one of the suspects was Rufus; that Rufus had previously worked in the restaurant; and that he had seen the other two suspects in the company of Rufus on many occasions. Officer Fromel further testified that the complaining witness was shaking and somewhat hesitant about talking when he first arrived on the scene.

On cross-examination, Officer Fromel admitted that his report, made out at the time of this incident, did not contain the name Rufus; that it did not mention that the complaining witness had observed the three men in

the neighborhood previously; and that the report made no reference to the name of Redfield.

Investigator Jerold Wojnar testified that the complaining witness told him that Eddie Rufus and two of his companions had robbed McDonald's; that he thought Rufus' two companions were the "Redfields"; and that he had previously seen all three individuals in the neighborhood and store. The complaining witness was then taken to the police station where he viewed four or five photo albums of past offenders. However, at this time the complainant could not identify the armed robbers from these photographs.

The following day, Investigator Wojnar went to the housing project, and his investigation led him to an apartment where he found Eddie Rufus and Ronald Redfield. Upon entering a bedroom in that apartment, Investigator Wojnar observed a black-handled push-button knife on top of an ironing board. When asked what this object was, Rufus replied that it was his knife.

Subsequently, Investigator Wojnar obtained "[p]hotos of additional suspects that might possibly be the third offender." The investigator then brought these photographs to complainant so that he could view them. After seeing these photographs, the complaining witness informed Wojnar that none of these photographs showed the third offender.

On approximately April 20, 1975, Investigator Wojnar returned to McDonald's and showed the complaining witness additional photographs of different subjects. At this time, the complainant recognized one of those subjects. After this identification had taken place, the investigator began searching for defendant. Family members of the defendant were informed by Investigator Wojnar that defendant was wanted for robbery. On April 27, 1975, the defendant, accompanied by his father, came into Investigator Wojnar's office. Defendant was then given his *Miranda* warnings and was placed under arrest.

At the close of all the evidence, a conference on jury instruction was held. Defense counsel tendered defense instruction No. 13, which was refused. This instruction, which is not contained in the Illinois Pattern Jury Instructions, reads as follows:

> "The defendant denies that he is the person who committed the crime. Before you can find the defendant guilty as charged you must be convinced beyond a reasonable doubt that the defendant has been correctly identified as the person who committed the crime. If you are not convinced beyond a reasonable doubt that the defendant was the person who committed the crime, you must find the defendant Not Guilty."

In denying defendant's instruction No. 13, the trial court stated:
> "I think it unduly calls attention to one specific element of the

crime to be proven. We have I.P.I. 1042 [*sic*], which adequately covers the elements."

Defendant contends that the trial court committed reversible error when it refused the aforementioned identification jury instruction since defendant's sole defense was mistaken identification. As stated above, the trial court refused to give the instruction tendered by defendant and limited itself to the Illinois Pattern Jury Instructions on witness' credibility and on the prosecution's burden of proof. (IPI Criminal No. 1.02 and IPI Criminal No. 2.03 (1968).) Instruction No. 1.02 states:

"You are the sole judges of the credibility of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, any interest, bias or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

Instruction No. 2.03 provides:

"The defendant is presumed to be innocent of the charge against him. This presumption remains with him throughout every stage of the trial and during your deliberations on the verdict, and is not overcome unless from all the evidence in the case you are convinced beyond a reasonable doubt that the defendant is guilty.

The State has the burden of proving the guilt of the defendant beyond a reasonable doubt, and this burden remains on the State throughout the case. The defendant is not required to prove his innocence."

The instruction tendered by defendant was patterned after a "Model Special Instruction on Identification" adopted in *United States v. Telfaire* (D.C. Cir. 1972), 469 F.2d 552, 558-59. However, three appellate districts in this State have held that the refusal to give the *Telfaire* instruction was proper where IPI Criminal Nos. 1.02 and 2.03 were given to the jury. (*People v. Hefner* (5th Dist. 1979), 70 Ill. App. 3d 693, 388 N.E.2d 1059; *People v. White* (4th Dist. 1978), 58 Ill. App. 3d 226, 227-28, 374 N.E.2d 250; *People v. Attaway* (1st Dist. 1976), 41 Ill. App. 3d 837, 855, 354 N.E.2d 448.) Additionally, in a similar case, *People v. Fox* (1971), 48 Ill. 2d 239, 269 N.E.2d 720, the Illinois Supreme Court ruled that the refusal of an instruction on the issue of identification was proper, even though the identification of the defendant was a primary issue. It stated:

"The defendant complains that since his theory of defense was erroneous identification he had a right to have his instruction on identification given. IPI-Criminal section 3.15 recommends that no instruction be given on this subject stating that the subject is adequately covered by instruction No. 1.02 on credibility of

witnesses. Instruction No. 1.02 was given as State's instruction No. 2. The court also gave IPI-Criminal instruction No. 2.03 as State's instruction No. 4. This instruction covers the presumption of innocence and the burden of proof on the State to prove the defendant guilty beyond a reasonable doubt. We think these two instructions adequately cover the subject matter of defendant's instruction No. 3 in a clearer and more concise and accurate manner than defendant's instruction." 48 Ill. 2d 239, 249.

■■ As was pointed out by the *Attaway* court, Supreme Court Rule 451(a) requires that IPI Criminal Instructions be used when applicable and that when no such instruction is applicable, the instruction given should be "simple, brief, impartial, and free from argument." (Ill. Rev. Stat. 1977, ch. 110A, par. 451(a).) Defendant argues that defense instruction No. 13 and the *Telfaire* instruction "are quite dissimilar in style" and that, for this reason, defense instruction No. 13 satisfies the requirements of Rule 451(a). It is true that defendant's proposed instruction is simpler and more concise than the model instruction adopted in *Telfaire*. However, we are in agreement with the trial court that the issue of identification was adequately covered by IPI Criminal No. 1.02. Since there was an applicable Illinois Pattern Instruction which stated the law accurately, the trial did not err in refusing defense instruction No. 13. Ill. Rev. Stat. 1977, ch. 110A, par. 451(a); *People v. Dickens* (1974), 19 Ill. App. 3d 419, 424, 311 N.E.2d 705.

■■ Defendant further argues that both IPI Criminal No. 1.02 and No. 2.03 fail to adequately focus the attention of the jury on the issue of identification. We cannot agree. Instruction No. 1.02 states that, when "considering the testimony of any witness" the jury "may take into account his ability and opportunity to observe, his memory, * * *." We are of the opinion that this statement sufficiently covers the subject matter of identification. Accordingly, defendant suffered no prejudice by the trial court's refusal of his instruction. In further support of this conclusion, we must point out that defense counsel emphasized repeatedly in closing argument that defendant had been misidentified by the complaining witness. As stated in *People v. Hefner*, "discussion of the factors surrounding the circumstances of an identification are better left to closing argument than to instructions."

■■ In conjunction with the aforementioned arguments, defendant urges that this court follow the holdings of the Federal jurisdictions, which have adopted the *Telfaire* instruction. However, it is well settled that this court is not bound by the decisions of lower Federal courts even in regard to Federal constitutional issues. See *People v. Stansberry* (1971), 47 Ill. 2d 541, 544, 268 N.E.2d 431, *cert. denied* (1971), 404 U.S. 873, 30 L. Ed. 2d 116, 92 S. Ct. 121.

■ The complaining witness testified that he had observed defendant numerous times in and around the restaurant prior to the armed robbery. We feel, therefore, that the identification of defendant as one of the armed robbers was proven beyond a reasonable doubt.

For the foregoing reasons, the judgment of the circuit court of Cook County is affirmed.

Judgment affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.