THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. LUTHER DANIELS, Defendant-Appellant.

First District (1st Division)   No. 1—90—3081

Opinion filed September 28, 1992.—Rehearing denied August 2, 1994.

Rita A. Fry, Public Defender, of Chicago (Evelyn G. Baniewicz, Assistant Public Defender, of counsel), for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Laura L. Morrison, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MANNING delivered the opinion of the court:

Following a jury trial in the circuit court of Cook County, defendant Luther Daniels was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)) and sentenced to 12 years in prison. On appeal defendant argues that: (1) the trial court erred in refusing to instruct the jury on defendant's non-Illinois Pattern Jury Instruction (IPI); and (2) he was not proved guilty beyond a reasonable doubt. The following evidence was presented at trial.

About 7 a.m. on September 3, 1989, the victim, Jamil Fakhouri, took a cab to work at his cousin's grocery store located at Harrison and California Streets. When the victim exited the taxi, he noticed defendant and two men standing in front of a tavern. The victim recognized the defendant as defendant had been a frequent customer in the liquor store where the victim worked. The victim walked down the street when he heard someone shout to him. He stopped and looked back, where he saw defendant and the two men proceed to cross the street and follow behind him. The victim testified that the defendant stated, "Hey man, I need three dollars," to which he replied that he did not have $3 and continued walking. Defendant followed after the victim requesting money, and eventually caught up to him. At that point, the defendant stated. "Hey man, I want money and I need the money. I want three dollars to buy liquor."

The victim refused to give defendant money and the two continued to walk. As they walked on one side of the street, the two men who accompanied defendant walked on the opposite side of the street. Defendant again told the victim that he wanted money and that he would take the money if the victim did not give it to him. The victim replied, "You can't take my money unless you kill me." Defendant then punched the victim in the face. The victim spat on defendant and demanded that defendant leave him alone. At that point defendant punched the victim again and knocked off his glasses. The victim testified that he did not immediately pick up the glasses because he saw defendant pull out a knife and hold it in his hand. The victim indicated that the blade was four inches long. He tried to pull the knife away from defendant but his hand slipped and was severely cut.

The two other men watched the incident as they sat in front of a gas station across the street. The victim stated that as he stood up someone hit him in the back and that he turned around and saw the person run. The defendant at that time snatched the victim's wallet, which contained about $430. The victim walked to a friend's home, then to a store where he called the police. Officer Hellman arrived at the store and took the victim to a hospital. After leaving the hospital, the victim was taken to view a lineup where he identified defendant as the offender. He testified that at the time of the incident defendant was wearing a dark jacket and a "tight" hairstyle. The victim stated that at the lineup defendant wore a different jacket, pants and hairstyle from that he had worn during the robbery.

At trial the victim identified defendant as the person whom he had seen the morning of the incident. He testified that defendant was the same person that he had seen as a customer at his cousin's store

10 days before the incident. The victim further testified that defendant had purchased wine at the store several times before. The victim also identified defendant from photographs of the lineup in open court.

Officer Hellman testified that about 8:40 a.m. on September 3, 1989, she received an assignment to talk with a robbery victim at California Street. As she drove to the location, Hellman was flagged down by the victim, who had blood on his hands and head. The victim told Hellman what had happened and gave her a description of the offender. The victim described the perpetrator and indicated that he knew the man. Hellman stated that the victim used hand gestures to indicate the man's height, which she estimated to be 5 feet 5 inches. The victim stated that the offender weighed about 130 pounds, but he did not tell Officer Hellman that the defendant had a beard or mustache.

Detective Cornelison testified that he conducted a lineup about 1:40 p.m. on September 3, 1989. He stated that the victim identified the defendant at the lineup, and Cornelison made an in-court identification of defendant as the person to whom the victim pointed during the lineup. Cornelison noted that the hairstyle which defendant wore during the lineup was not the one he wore when he was first taken into the police station on September 3, 1989. Defendant's hair had previously been tightly braided, but at the time of the lineup had been unbraided and was fluffier.

Officer Michalak testified that on September 3, 1989, a motorist drove alongside his car and told him that there had been a robbery. Michalak radioed for assistance and learned that the victim was in the hospital receiving treatment. Michalak then proceeded to the area to find the offender. When he arrived at the scene, he saw two people sitting in a gas station parking lot. Michalak observed defendant and arrested him. He stated that at the time defendant was arrested there were several beer cans and wine bottles on the ground and that defendant had a very strong odor of alcohol on his breath. At the time of his arrest, defendant had no knife, blood, wallet or money on his person.

At the close of trial, defense counsel objected to Illinois Pattern Jury Instructions, Criminal, No. 1.02 (2d ed. 1981) (hereinafter IPI Criminal 2d No. 1.02) and did not want the standard instruction to be read to the jury. Over the objection of defense counsel, the court stated that it had reviewed the instructions and would give the standard instruction. The jury returned a verdict of guilty of armed robbery.

Defendant first argues that the trial court erred in refusing to

give the jury a proposed instruction as to factors to be considered in weighing the evidence of the identification. At the close of evidence, defendant submitted the following proposed jury instruction:

"When you weigh the identification testimony of a witness, you should consider all the facts and circumstances in evidence, including but not limited to, the following:

(1) The opportunity the witness had to view the offender at the time of the offense;

(2) The witness' degree of attention at the time of the offense;

(3) The witness' earlier description of the offender;

(4) The level of certainty shown by the witness when confronting the defendant; [and]

(5) The length of time between the offense and the identification confrontation."

The State objected to defendant's proposed instruction, and the court denied defendant's request. The court then gave the standard instruction on credibility of witnesses:

"You are the sole judge of the believability of the witnesses and of the weight to be given to the testimony of each of them. In considering the testimony of any witness, you may take into account his ability and opportunity to observe, his memory, his manner while testifying, and any interest, bias, or prejudice he may have, and the reasonableness of his testimony considered in the light of all the evidence in the case."

Defendant maintains that the proposed instruction which he submitted was an important supplement on the issue of identification, and that four of the five factors listed were taken directly from the committee comments to Illinois Pattern Jury Instructions, Criminal. He also maintains that the jury instruction given did not sufficiently instruct the jury on the law and circumstances to be considered in evaluating an identification.

In *People v. Wheatley* (1989), 183 Ill. App. 3d 590, 539 N.E.2d 276, the defendant raised the argument that the trial court erred in refusing to give his proposed jury instruction of identification, and allowing the State to tender jury instructions IPI Criminal 2d Nos. 1.02 and 2.03, the standard instructions. In that case, the victim was robbed by two men as he walked toward his home at about 10:15 p.m. The men approached the victim, pulled out a chrome-colored gun and told him to give up his money The victim was then forced into an alleyway and down the vestibule area of a building where defendants searched his pockets and took $140 in cash and a check for $35.

In refusing to give defendant's tendered instruction, the court stated that IPI Criminal 2d Nos. 1.02 and 2.03 sufficiently covered the content of defendant's proposed instruction. (*Wheatley,* 183 Ill.

App. 3d at 606.) The court also stated that defendant's proposed instruction was merely recommended by the committee, and, as such, the court had the discretion not to give the non-IPI instruction. Moreover, the court stated that Illinois courts have rejected the giving of a separate instruction for identification, holding that IPI Criminal 2d No. 2.03 sufficiently instructs the jury on the issue of misidentification. *People v. Benson* (1979), 71 Ill. App. 3d 591, 390 N.E.2d 113.

■ The facts in *Wheatley* are very similar to the facts in this case. Defendant here presented a non-IPI jury instruction that dealt with the issue of identification. He was concerned that jury instructions Nos. 1.02 and 2.03 did not sufficiently instruct the jury on the law and circumstances to be considered in evaluating an identification. However, Illinois Supreme Court Rule 451(a), in relevant part, states:

> "Whenever Illinois Pattern Instructions, Criminal (2d ed. 1981) (IPI Criminal 2d), contains an instruction applicable in a criminal case, giving due consideration to the facts and the governing law, and the court determines that the jury should be instructed on the subject, the IPI Criminal 2d instruction shall be used, unless the court determines that it does not accurately state the law." (134 Ill. 2d R. 451(a).)

The decision whether to give a non-IPI instruction is within the discretion of the trial court, and the court may properly refuse such an instruction where an IPI instruction is given which addresses the same issue. *People v. Collins* (1992), 227 Ill. App. 3d 670, 592 N.E.2d 217.

Defendant presented a non-IPI instruction which he asserts contained four of the five factors taken from the committee comments to the Illinois Pattern Jury Instructions, Criminal. The instruction requested by defense counsel was adequately addressed by IPI Criminal 2d Nos. 1.02 and 2.03. These two instructions sufficiently informed the jury on the issues of identification and credibility of the witnesses. Therefore, the trial court did not abuse its discretion in failing to give defendant's proposed non-IPI instruction.

Defendant next argues that he was not proved guilty beyond a reasonable doubt. Specifically, he contends that the victim's testimony was inconsistent and that there was no physical evidence linking him to the offense. The State maintains that the jury heard the evidence and judged the credibility of the witnesses and found defendant guilty The State asserts that although there were discrepancies in the victim's description of the physical characteristics of the defendant, the victim positively identified him in a lineup and again in court. The State maintains that such evidence was sufficient to prove him guilty beyond a reasonable doubt.

It is well settled that a positive identification by a single witness is sufficient to sustain a conviction, where the witness had a sufficient opportunity to view the accused, showed an adequate degree of attention to an offender's characteristics, described the offender with a reasonable degree of accuracy, displayed a sufficient amount of certainty in identifying the offender and identified the accused within a reasonable period of time following the crime. (*People v. Taylor* (1986), 143 Ill. App. 3d 252, 492 N.E.2d 1011.) Further, discrepancies or omissions in identification testimony do not, in themselves, generate a reasonable doubt if the identification is positive. (*People v. Slim* (1989), 127 Ill. 2d 302, 308, 537 N.E.2d 317.) It is the jury's prerogative to weigh testimony in light of its discrepancies and conflicts, to accept or reject as much or as little of the witnesses' testimony as it pleases, and to draw reasonable inferences from that testimony. *People v. Hanna* (1983), 120 Ill. App. 3d 602, 457 N.E.2d 1352.

Moreover, the relevant question where a conviction is challenged based on the sufficiency of the evidence is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. (*People v. Young* (1989), 128 Ill. 2d 1, 49, 538 N.E.2d 461.) A criminal conviction will not be set aside unless the evidence is so improbable or unsatisfactory as to create a reasonable doubt of the defendant's guilt. *People v. Eyler* (1989), 133 Ill. 2d 173, 191, 549 N.E.2d 268.

■ Here, the victim testified that the defendant approached him and demanded money. He stated that, as the defendant hit him, he saw defendant pull a knife on him. He had an opportunity to view the defendant at close range and testified that he had seen the defendant on several prior occasions at the liquor store. The victim also identified defendant in a lineup and in court. Although the victim's description of defendant differed from defendant's actual weight and height, these were issues for the jury to resolve. Likewise, the victim's omission of certain physical characteristics of defendant go to the weight of his testimony.

The defendant was arrested about two hours later in the same location of the robbery, which was a short distance from his home. Although defendant did not have on the same clothes, and had no blood or money on his person, the lineup and in-court identification of defendant was sufficient to convict. When viewing the evidence in the light most favorable to the prosecution, we find that defendant was proved guilty beyond a reasonable doubt.

For the above reasons, the judgment of the circuit court of Cook County is affirmed.

Affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.