THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. YOLANDA MASSE, Defendant-Appellant.

Second District    No. 2—90—0842

Opinion filed November 25, 1992.

G. Joseph Weller and Kim M. DeWitt, both of State Appellate Defender's Office, of Elgin, and Barbara R. Van Tine, of Mason City, for appellant.

James E. Ryan, State's Attorney, of Wheaton, and Patrick J. O'Shea, of Law Offices of Patrick J. O'Shea, of Lombard (William L. Browers, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

JUSTICE WOODWARD delivered the opinion of the court:

Defendant, Yolanda Masse, was convicted of armed robbery (Ill. Rev. Stat. 1989, ch. 38, par. 18—2(a)) and was sentenced to eight years' imprisonment. She argues that the trial court erred by refusing her tendered jury instruction, based on *United States v. Telfaire* (D.C. Cir. 1972), 469 F.2d 552, that identification testimony is an expression of belief or impression of the witness. She also argues that she was not proved guilty beyond a reasonable doubt because of weaknesses in the identification of the perpetrator of the crime.

At the trial, Dena Moore testified that she was on duty at a Clark gasoline station at 11:30 a.m. on June 15, 1989. A van drove to the door, and a woman exited the van and entered the station. Moore made an in-court identification of defendant as that woman. Moore had been talking on the telephone for about 15 minutes to a friend when the woman entered the station. The woman asked to use the rest room, but this request was not unusual. Moore told her to go outside and around the building. The woman disappeared from Moore's view for a few seconds, stood outside for about two minutes glancing at Moore, and then walked back to the van. She talked to the driver, who then stepped down and followed her into the station.

The man told Moore to hang up the phone and to give him the money from the register. He pulled a gun from his jacket and pointed it at her. She opened the register and handed him the bills. The man motioned for her to go into the back room. The woman

followed Moore and told her to put her hands behind her back. The woman taped Moore's wrists and closed the door. The man and woman remained in the station for half a minute and left. Moore could see them through half-inch slits in the door. She removed the tape and activated an alarm. The whole incident took about eight minutes. Moore testified that when the police arrived she was still scared, crying, shaking and even shouting obscenities. She testified that she initially described the assailant as a woman in her late twenties, 5 feet 4 inches tall, weighing 120 pounds, and with shoulder-length brown hair.

Later that day, Moore went to the police station and compiled a face of her assailant using an identikit. The kit is comprised of sets of five or six examples each of eyes, noses, facial contours and hair styles. Moore considered the eyes and hair important distinguishing features. Officer Lucchini of the Elmhurst police department helped her make the composite by asking her questions about the accuracy of each feature. After several corrections, she completed a composite she felt reflected the appearance of the assailant. The assailant had not worn eyeglasses. Lucchini testified that Moore estimated that the assailant was 35 years old and weighed 130 pounds.

On August 28, 1989, Officer Gary Fuller of the Elmhurst police department conducted a lineup identification. Moore went to the courthouse in Skokie, where she viewed six similar women through a window. Moore identified defendant as her assailant. The six women did not have the same hair style. One had short hair, and another had long, curly hair. Moore eliminated two of the women from consideration because they did not look alike.

Officer Dan Kaepplinger of the Hanover Park police department arrested defendant pursuant to a warrant on August 26, 1989. He had known her for over a year when she worked in a gas station and a convenience store in Hanover Park. He knew her on a first-name basis and saw her 75 to 100 times when he bought items. Each time, she wore eyeglasses.

Peter Epstein testified that he was an optometrist and examined defendant on March 10, 1988. Defendant was nearsighted to an acuity of 20/200 by squinting and 20/400 without squinting. This diagnosis meant that she could see an object 20 feet away as poorly as a person with standard vision would see it at 400 feet. Epstein prescribed her eyeglasses rather than contact lenses, but he did not know if she saw another optometrist. Vision of 20/400 is still sufficient to see a person at 20 feet, to see aisles in a store, or to see arms and hands a foot away.

Kim Hill testified that he lived with defendant for 3½ years. He thought she appeared the same during trial as she had on June 15. She wore glasses, and he had never known her to wear contact lenses.

Prior to the closing arguments, the court conducted a conference on instructions. The court accepted People's instruction No. 4, which was based on Illinois Pattern Jury Instructions, Criminal No. 1.02 (2d ed. 1981) (hereinafter IPI Criminal 2d). The court also accepted an instruction based on IPI Criminal 2d No. 2.03, regarding the burden of proof. Defense counsel tendered an instruction reading, "Identification testimony is an expression of belief or impression of the witness," and cited *Telfaire*. The court denied the instruction. The instructions given by the court stated:

"You are the sole judges of the believability of the witnesses and of the weight to be given to the testimony of each of them.

In considering the testimony of any witness you may take into account his or her ability and opportunity to observe, his or her age, his or her memory, his or her manner while testifying, any interest, bias, or prejudice he or she may have, and the reasonableness of his or her testimony considered in the light of all the evidence in the case."

During his argument, the prosecutor contended the identification evidence was strong. He stated that Moore had seen the perpetrator for eight minutes and at the close range of across the counter. The lighting was good, and Moore saw no obstructions for most of the time of the incident. The prosecutor argued that the identikit composite matched defendant's face. The prosecutor also told the jury to use the lineup photograph. He argued Moore was honest because she admitted she could not select a photograph of the male perpetrator.

The defense counsel argued that Moore made mistakes in her testimony as follows. On the stand and in view of defendant, Moore stated the perpetrator was only 25, but at the time of the incident she told Officer Lucchini the perpetrator was in her thirties. She testified the gunman held the gun with his right hand, but she told Officer Kopczynski he used his left hand. The facts showed Moore was extremely upset and frightened. Counsel argued that the time involved was not eight minutes but short intervals of a few seconds span and that they totaled less than eight minutes. Counsel argued Moore did not pay attention to the perpetrator at first because she was doing nothing unusual and Moore was too involved in a 15-min-

ute telephone conversation with a good friend. During the actual robbery, Moore would have looked at the gun and the money rather than the female perpetrator. Later, the female perpetrator taped Moore's hands from the back. Counsel argued that Moore would be too excited to remember the details. Counsel argued that the length of hair of the identikit composite was too short when compared to defendant's lineup photograph hair even allowing for growth. Counsel also repeated that Moore thought the perpetrator's eyes were a striking feature, but counsel argued that the eyes of the composite were different from those of defendant.

Defense counsel also argued that the lineup identification was weak because it was conducted 11 weeks after the incident. Counsel argued that the sample of women was insufficient because none appeared similar to defendant. The most similar woman in the photograph had long, straight hair and was bigger, but Moore eliminated consideration of her because of the hair; Moore chose the woman with the wavy hair. Counsel argued that the process of elimination resulted in Moore choosing the only remaining person rather than in producing a direct identification. Counsel argued that the long trip to Skokie increased Moore's resolve to select somebody. Defense counsel called upon the jury to examine the lineup photograph carefully to see that none of the woman were similar other than in race. Counsel also made other arguments, including ones regarding the absence of eyeglasses.

Following the arguments, the court read the instructions, including the ones listed previously. The jury found defendant guilty, and she appeals.

On appeal, defendant argues that the trial court should have instructed the jury that identification testimony is an expression of belief or impression of the witness. She also argues that the identification was not proved beyond a reasonable doubt. In *Telfaire*, the United States Court of Appeals suggested the use of several instructions to prevent the danger of mistaken identification as a threat to justice. (*Telfaire*, 469 F.2d at 555.) Several of the suggested instructions are similar to IPI Criminal 2d No. 1.02 by calling attention to the opportunity of the witness to observe and the factors affecting the observation. (469 F.2d at 558.) *Telfaire* also included the disputed language regarding belief or impression. Similarly, the Illinois Supreme Court has determined that an identification can be sufficient when it is based on a total impression of the suspect rather than on a list of the distinguishing features of the face. *People v. Slim* (1989), 127 Ill. 2d 302, 309.

■■ However, the appellate court of this State has repeatedly ruled that the refusal to give the *Telfaire* instruction was proper when the jury received IPI Criminal 2d Nos. 1.02 and 2.03. (See *People v. Benson* (1979), 71 Ill. App. 3d 591, 594 (and cases cited therein).) No special instruction on identification is required, because IPI Criminal 2d No. 1.02 is sufficiently detailed to instruct the jury. (*People v. Fox* (1971), 48 Ill. 2d 239, 249.) Supreme Court Rule 451(a) (134 Ill. 2d R. 451(a)) requires that IPI Criminal Instructions be used when applicable. (See *People v. Ramey* (1992), 151 Ill. 2d 498, 535.) In addition, the Committee Note to IPI Criminal 2d No. 3.15 recommends that no special instruction be given on the subject of the circumstances of identification because the subject is adequately covered by IPI Criminal 2d No. 1.02. The note also provides that the circumstances of an identification are a proper subject of a closing argument.

■■ People's instruction No. 4 in the cause before the court contains all the factors affecting credibility listed in IPI Criminal 2d No. 1.02. One of the factors, the opportunity to observe, is the same as a factor a court will use in assessing identification testimony. These factors include:

"(1) the opportunity the victim had to view the criminal at the time of the crime; (2) the witness' degree of attention; (3) the accuracy of the witness' prior description of the criminal; (4) the level of certainty demonstrated by the victim at the identification confrontation; and (5) the length of time between the crime and the identification confrontation." (*People v. Slim* (1989), 127 Ill. 2d 302, 307-08.)

Trial courts may allow expanded versions of IPI Criminal 2d No. 1.02 to include the factors listed in *Slim*. IPI Criminal 2d No. 1.02, Committee Note (Supp. 1989); see, *e.g., People v. Bias* (1985), 131 Ill. App. 3d 98, 103.

While People's instruction No. 4 did not include the specific *Slim* factors as did the instruction in *Bias*, defense counsel stressed the concerns addressed in the *Bias* instruction in her closing argument, as recommended by the committee note to IPI Criminal 2d No. 3.15. (See also *Benson*, 71 Ill. App. 3d at 595 (in closing, defense counsel repeatedly emphasized the alleged misidentification).) She argued that the lineup identification was poor because of the 11-week interval after the incident and because of other defects. She argued that the witness did not pay attention to the perpetrator and that she changed her description of the suspect. Thus, we

354

believe that the jury was sufficiently apprised of the circumstances regarding identification.

Defendant also contends that the identification was not proved beyond a reasonable doubt. She repeats many of the same arguments made to the jury regarding the alleged defects in Moore's identifications.

■ When the identification of the defendant forms the central question in a criminal prosecution, the testimony of even one witness is sufficient to convict where the witness is credible and had viewed the accused under conditions permitting a positive identification. (*People v. Richardson* (1988), 123 Ill. 2d 322, 353.) The jury has the duty of assessing the credibility of the witnesses, and a court of review will not set aside a jury's verdict unless the evidence presented at trial is so improbable as to raise a reasonable doubt of guilt. Minor discrepancies in testimony do not, by themselves, create a reasonable doubt. 123 Ill. 2d at 353.

■ The testimony regarding the in-court and pretrial identifications is not so improbable as to raise a reasonable doubt that Moore misidentified defendant. (See *Richardson*, 123 Ill. 2d at 348-52.) Moore saw the perpetrators in a well-lit and small area of the gas station with no obstruction until she was put behind the slotted door. She had ample time to observe defendant inside and outside the building. Moreover, the jury had the benefit of comparing Moore's identikit composite with defendant's presence in court. The jury was in a superior position to assess the identification testimony, and we will not second-guess its finding.

For the above reasons, the judgment of the circuit court is affirmed.

Affirmed.

UNVERZAGT and McLAREN, JJ., concur.