NOTICE

Decision filed 04/24/24. The text of this decision may be changed or corrected prior to the filing of a Petition for Rehearing or the disposition of the same.

2024 IL App (5th) 230272-U

NO. 5-23-0272

IN THE

APPELLATE COURT OF ILLINOIS

FIFTH DISTRICT

NOTICE

This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Madison County. |
| | ) | |
| v. | ) | No. 17-CF-3263 |
| | ) | |
| KEVIN D. GARDNER, | ) | Honorable |
| | ) | Ronald R. Slemer, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

PRESIDING JUSTICE VAUGHAN delivered the judgment of the court.
Justices Cates and Moore concurred in the judgment.

**ORDER**

¶ 1    *Held*: The motion of the Office of the State Appellate Defender to withdraw as defendant's appellate counsel is granted and the circuit court's dismissal of defendant's *pro se* postconviction petition is affirmed.

¶ 2    Defendant, Kevin D. Gardner, appeals the circuit court's first-stage dismissal of his *pro se* postconviction petition. On appeal, defendant's counsel, the Office of the State Appellate Defender (OSAD), filed a motion to withdraw as defendant's counsel and a supporting memorandum, arguing defendant's appeal presents no potentially meritorious issues for review. See *Pennsylvania v. Finley*, 481 U.S. 551 (1987). This court provided defendant an opportunity to respond to OSAD's motion, but no response was provided. After considering the record, and OSAD's supporting memorandum, we grant OSAD's motion for leave to withdraw and affirm the court's summary dismissal of defendant's postconviction petition.

1

¶ 3                            BACKGROUND

¶ 4      On November 15, 2017, defendant was charged, by information, with first degree murder following the death of Robert Gilmore, in violation of section 9-1(a)(2) of the Criminal Code of 2012 (720 ILCS 5/9-1(a)(2) (West 2016)). At his initial appearance, Ms. Copeland was appointed to represent defendant. Defendant's arraignment hearing was held on December 7, 2017, and defense counsel entered a plea of not guilty and waived a formal reading of the charges. On January 8, 2018, the trial court entered an order continuing the trial on the motion of defendant. Similar orders and docket entries were issued on January 16, 2018, and January 22, 2018, again attributing the delay to defendant based on defendant's motions to continue.

¶ 5      On February 12, 2018, defendant filed a motion for speedy trial "without attorney M[s]. Copeland acting *pro se*," advising the court that he was exercising his right to a speedy trial by jury and was putting the State on notice that he was "in fact ready for trial." Following a hearing on February 20, 2018, the court issued an order and a docket entry stating the trial was continued on the motion of defendant. Orders and docket entries with similar findings were issued on March 19, 2018, April 16, 2018, May 14, 2018, and June 18, 2018. On July 11, 2018, defendant's appointed counsel was allowed to withdraw, and special defender, Calvin Fuller, was appointed to represent defendant. Mr. Fuller's appearance was filed on July 13, 2018. Despite filing numerous motions, none of Mr. Fuller's pleadings included a speedy-trial demand.

¶ 6      On July 19, 2018, defendant filed a motion for leave to proceed *pro se* specifically requesting Ms. Copeland's removal. He also filed a notice of objection to delay stating, "I formally object to any and all delays to my demand for a speedy trial. I have not sought after, asked for or authorized anyone to obtain continuances in this cause nor do I intend to."

¶ 7     On August 10, 2018, the trial court issued an order setting the case for a pretrial hearing on August 27, 2018. Said order specifically stated in bold type, "All parties, including the defendant are to be personally present at the pre-trial hearing." Following a hearing on August 20, 2018, the trial court issued an order granting defendant's motion to continue and attributing the delay to defendant.

¶ 8     The pretrial hearing was held on August 27, 2018. Defendant was present and was apprised of the charges against him as well as the potential penalties of each charge. Mr. Fuller advised the court of potential conflicts and defendant confirmed his waiver of same. At no time did either defendant or his counsel raise a speedy trial issue. Following the hearing, the court issued a docket order stating that defendant was admonished, the parties indicated that discovery was complete, and the case was set for trial on October 15, 2018. All pretrial motions were required to be filed by September 28, 2018. On September 26, 2018, defense counsel filed numerous motions, including a motion for supplemental discovery and appointment of a special investigator. On October 15, 2018, the trial court issued an order continuing the trial and attributed the delay to defendant per an email from defendant's attorney. On October 18, 2018, the court set a pretrial conference and hearing on November 29, 2018. On October 31, 2018, the State moved to continue the hearing. The pretrial hearing was rescheduled for December 3, 2018.

¶ 9     The parties presented for hearing on December 3, 2018. Defendant was present. The court first addressed the prior relationship between defense counsel and the assistant state's attorney. Defendant advised the court that he wished to waive any conflict that may exist from that history. He further confirmed that he wanted Mr. Fuller to continue his representation of him. The court also addressed a second potential conflict regarding a recent appointment to Mr. Fuller on a postconviction petition of the convicted murderer of defendant's cousin. Again, defendant waived

3

any potential conflict. Thereafter, the court addressed the pending motions. The motions *in limine* were scheduled for January 3, 2019, and the trial was set for March 4, 2019. At no time was a request for speedy trial raised or discussed, despite the trial court asking both parties if there was "anything else that I need to take up on the record at this time." Following the hearing, the court issued an order requiring the State to supplement its discovery and granted defendant's request for an investigator.

¶ 10 On January 3, 2019, the court addressed, *inter alia*, the defendant's investigator, the State's motion to amend the information, defendant's requested discovery, the State's motion to address prior felonies, defendant's motions *in limine*, and defendant's motion to dismiss based on the constitutional claim of due process violation stemming from the grand jury proceeding. Following the court's consideration of those issues, the court asked both parties if there was anything else that it needed "to take up at this time." Defense counsel raised two issues, neither of which involved defendant's speedy trial request. On January 9, 2019, the trial court issued an order with its rulings on the issues presented at the January 3, 2019, hearing.

¶ 11 Thereafter, numerous motions were filed by both parties and the parties presented for a final pretrial conference on February 14, 2019. Following a lengthy hearing addressing all of the pending motions, the court again asked if there was anything further that it had not taken up that needed to be addressed. Again, defense counsel responded by saying, "No, Your Honor." The trial remained set for the week beginning March 4, 2019. A written order with the court's rulings from the hearing was filed on February 15, 2019.

¶ 12 On March 1, 2019, defendant's trial counsel filed a motion to dismiss based on violation of defendant's speedy-trial rights. The motion claimed that neither of defendant's motions for speedy trial were ever set for argument and no ruling was ever issued on the motions. The motion

4

argued that defendant's right to speedy trial was a personal right that could not be waived by his counsel without his specific authorization. The motion was argued at the March 4, 2019, hearing. The court found that the fact that defendant "filed a motion on his own while represented by counsel does not start the speedy trial in this particular case" and therefore denied the motion.

¶ 13     The case proceeded to trial. Evidence presented at trial established that on November 13, 2017, Gilmore was found slumped over the steering wheel of his car, dead from an apparent gunshot wound. A loaded gun found on the passenger's side of Gilmore's car was found not to have fired the fatal bullet. The forensic pathologist concluded Gilmore died of a gunshot wound on the right side of his temple.

¶ 14     Surveillance video from a nearby meat market showed a gray Dodge Magnum arriving at the Madison Meat Market around 6:50 p.m. Defendant, Eric Mason, and Dominick Harris alighted from the vehicle and entered the market. When they came out, Gilmore arrived in a black Chevy Impala. Defendant, Mason, and Harris then left the parking lot in the Magnum. Mason testified that he was originally charged with Gilmore's murder, but pleaded guilty to obstruction of justice and received an eight-year sentence in exchange for his testimony. He said that on the evening of the shooting, he picked up defendant and Harris in his Dodge and the three men drove around. They went to the Madison Meat Market, where Mason saw defendant displaying a handgun. When they left the store, a black Impala pulled into the parking lot. Defendant said that he previously "got into it" with the person in the other car.

¶ 15     As soon as Gilmore pulled up, at defendant's insistence, the three men left the store's parking lot. They turned right onto Fourth Street and Mason parked his car in front of his girlfriend's grandmother's house. Mason testified that defendant jumped out of the car, explaining that he was going to a relative's house, but Mason did not actually see where defendant went. Ten

minutes later, Mason heard gunshots and saw the black Impala drive past slowly before crashing into another car. As Mason drove off, defendant jumped back into the car, saying, "You all ain't heard nothing, you all ain't seen nothing." Mason then dropped defendant off and went home.

¶ 16    Harris testified that he, too, was also originally charged with Gilmore's murder, but the charges were dropped in exchange for his agreement to testify. He said that, on the evening in question, he was with defendant. Mason picked them up. At one point, defendant hopped out of the car. As Harris and Mason waited in the car, Harris heard gunshots, then saw a car go slowly past them and hit a parked car. They began to drive away and saw defendant running. Harris stated that as defendant got into Mason's car, he said, "Did you all hear them shots?" Before leaving the car that night, defendant said, "You ain't heard shit."

¶ 17    Sergeant Jeremy Hunter testified that he interviewed defendant after he was apprehended. Defendant denied knowing Gilmore or having any involvement in the shooting. Defendant's cousin, Denzel McNeil, testified that on September 25, 2017, he and defendant were at a gas station when Gilmore cut them off and then pulled a firearm on them. He conceded that neither man reported the incident to police.

¶ 18    Defendant also testified at the hearing and stated that he lied to Sergeant Hunter when he told the officer that he did not know Gilmore and denied shooting Gilmore. At the hearing, defendant acknowledged that he had known Gilmore since 2017 because Gilmore sold him drugs. At the time of his death, Gilmore owed defendant $1300. Defendant stated he had twice tried to collect the money from Gilmore and there was "bad blood" between them. He further testified that Gilmore previously flashed a gun at him and McNeil at the gas station.

¶ 19    Defendant's testimony of the incident on November 13, 2017, claimed that defendant was at the Madison Meat Market. When he saw the black Impala pull into the lot, he knew that it was

6

Gilmore, so he told Mason "get me up out of here" to avoid an altercation with Gilmore. He stated that Mason dropped him off at his cousin's house, but when he tried to go inside, he could not find the spare key. He was standing on the porch waiting for Mason to come back when he noticed Gilmore's car at the edge of the parking lot. Defendant testified that he saw Gilmore holding something that appeared to be a firearm. He feared for his life and shot Gilmore. Defendant insisted that he did not intend to harm anyone, and he was just afraid that Gilmore would shoot him first. Defendant admitted that he never called 9-1-1, and that he later hid from the police.

¶ 20    The court tendered jury instructions on first degree murder, second degree murder, and self-defense. The jury found defendant guilty of two counts of first degree murder and further found that he personally discharged the firearm that caused the victim's death.

¶ 21    Following the trial, defendant filed a *pro se* posttrial motion alleging that counsel was ineffective. Specifically, he alleged that Fuller was ineffective for failing to (1) introduce "certain evidence" that defendant believed was "best" for his defense, (2) request a *voir dire* question regarding racial bias, (3) properly present his self-defense theory, (4) present mitigating evidence in support of his self-defense claims, and (5) tender self-defense jury instructions. Defendant also claimed that counsel labored under a *per se* conflict of interest and improperly allowed the admission of other-crimes evidence. Defense counsel also filed a detailed posttrial motion, alleging, *inter alia*, that defendant's speedy-trial rights were violated.

¶ 22    The motions proceeded to hearing and the trial court conducted a preliminary *Krankel* inquiry. See *People v. Krankel*, 102 Ill. 2d 181 (1984). After addressing the claims set forth above and repeatedly asking defendant if he had any other complaints regarding his counsel, defendant said no and eventually the court found no basis for defendant's claims. The trial court also conducted a hearing on defense counsel's motion, in which he again argued, *inter alia*, that

7

defendant was denied a speedy trial. The court found that only 41 days of delay were attributable to the State and that the parties agreed to the other additional delays. The court added that defendant was represented at all times by counsel, who did not adopt his *pro se* motions. Thereafter, the trial court also denied defense counsel's posttrial motion. Defendant was later sentenced to 80 years' incarceration for the conviction.

¶ 23    Defendant timely appealed the conviction and sentence. On appeal, defendant argued that (1) his first degree murder charge should be reduced to second degree murder, (2) the trial court failed to conduct an adequate inquiry during the *Krankel* hearing, (3) the case should be remanded for a new *Krankel* hearing, (4) defendant's aggregate 80-year sentence was excessive, and (5) defendant's conviction on count II for first degree murder should be vacated. This court issued an order affirming the conviction on count I for first degree murder as well as the court's sentence but vacated the second count conviction for first degree murder. *People v. Gardner*, 2021 IL App (5th) 190421-U, ¶ 83. The Illinois Supreme Court denied defendant's petition for leave to appeal. *People v. Gardner*, No. 128133 (Ill. Mar. 30, 2022).

¶ 24    On January 4, 2023, defendant filed the *pro se* petition for postconviction relief pursuant to the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2022)) at issue in this appeal. The petition raised four claims. The first alleged ineffective assistance of trial counsel due to his failure to impeach Mason and Harris on their inconsistent testimonies and his failure to suppress the evidence because those witnesses were promised leniency in exchange for their testimony. He further alleged that his appellate counsel was equally ineffective for failing to raise trial counsel's ineffectiveness for those issues on appeal. Defendant's remaining three claims contended (2) ineffective assistance of trial counsel "where the trial judge abused his discretion" and violated defendant's right to speedy trial under section 103-5(a) of the Code of Criminal Procedure of 1963

8

(725 ILCS 5/103-5(a) (West 2022)) by denying defendant's speedy-trial demand; (3) ineffective assistance of trial counsel where he failed to challenge the trial court giving the jury three different jury instructions for first degree murder, second degree murder, and not guilty, which "misled the jury" because only self-defense and second degree murder jury instructions should have been provided; and (4) that defendant's sixth and fourteenth amendment rights were denied where the cumulative errors within defendant's direct appeal, pretrial, and trial proceedings viewed collectively showed those proceedings were unfair and prejudicial to defendant. The petition was supported by defendant's affidavit stating the contents of his petition were "true and correct in substance and in fact" and the assertions were made upon his "personal knowledge and belief." The remainder certified that he served the named party. Attached to the petition were transcripts of the testimony provided by Mason and Harris at the trial, defendant's pleadings related to his request for speedy trial, the transcript from the March 4, 2019, hearing addressing his speedy trial request, a copy of section 103-5, and defendant's trial testimony.

¶ 25   On March 20, 2023, the trial court issued an order noting that no affidavit beyond that stated above, and no evidence beyond that from the hearing, which was already part of the record, was submitted in support of the postconviction claims. The court found the very detailed trial court record refuted the claims raised by defendant on appeal and in his petition. The court further noted the appellate court found defendant's claims on appeal were refuted by the record and there was no showing of neglect on the part of trial counsel that warranted appointment of new counsel. The circuit court's order stated,

> "Defendant's petition is a collection of facts, opinions, legal citations[,] and argument. The court has gone through what has been presented and searched for constitutional claims. Defendant does not raise any claims that were not brought or could not have been brought

during the appeal. The petition does not set forth facts which, if true, make a substantial showing of a constitutional violation, not barred by *res judicata* or forfeiture. The defendant's petition is clearly frivolous and without merit."

The court's order dismissed defendant's postconviction petition and defendant appealed.

¶ 26                                    ANALYSIS

¶ 27    The Post-Conviction Hearing Act (Act) provides a mechanism by which a criminal defendant may assert that his conviction resulted from a substantial denial of his constitutional rights. 725 ILCS 5/122-1(a) (West 2020); *People v. Delton*, 227 Ill. 2d 247, 253 (2008). The Act provides a three-stage process for adjudicating postconviction petitions. *People v. Allen*, 2015 IL 113135, ¶ 1. At the first stage, the trial court determines if the petition is meritorious or if it is frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2020). A petition is frivolous or patently without merit when the allegations, taken as true, fail to state the gist of a constitutional claim. *People v. Collins*, 202 Ill. 2d 59, 66 (2002). A meritorious petition will advance to second-stage proceedings. *People v. Greer*, 212 Ill. 2d 192, 204 (2004). A frivolous petition will be summarily dismissed. *Id.* at 203-04; 725 ILCS 5/122-2.1(a)(2) (West 2020). The dismissal of a postconviction petition is reviewed *de novo*. *People v. Hodges*, 234 Ill. 2d 1, 9 (2009).

¶ 28    Postconviction petition proceedings are collateral proceedings inquiring "only into constitutional issues that were not, and could not have been, adjudicated on direct appeal." *People v. Pitsonbarger*, 205 Ill. 2d 444, 455-56 (2002). "[I]ssues that were raised and decided on direct appeal are barred from consideration by the doctrine of *res judicata*; issues that could have been raised, but were not, are considered waived." *Id.* at 456. Defendant's appointed counsel, OSAD, found no meritorious issues could be raised from the trial court's dismissal of defendant's *pro se*

10

petition. It presented the possible issues that could be raised and why the issues had no merit. We now consider those issues and include the relevant facts necessary to determine the issue.

¶ 29 Defendant's petition contained three specific allegations that trial counsel was ineffective. To establish that a defendant was deprived of the effective assistance of counsel, he must establish both that his attorney's performance was deficient and resulting prejudice. *People v. Manning*, 227 Ill. 2d 403, 412 (2008) (citing *People v. Pugh*, 157 Ill. 2d 1, 14 (1993)). The decision whether to cross-examine a witness is generally a matter of trial strategy, and, as such, will generally not support a claim of ineffective assistance of counsel. *People v. Leeper*, 317 Ill. App. 3d 475, 483 (2000).

¶ 30 Defendant's claim refers to alleged facts and statements by Mason and Harris that were outside the record. However, defendant did not attach anything to his petition that would establish that Mason or Harris provided inconsistent statements at trial. See 725 ILCS 5/122-2 (West 2020) ("The petition shall have attached thereto affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached."); see also *People v. Jones*, 399 Ill. App. 3d 341, 371 (2010) ("It is of course well settled that a claim that trial counsel failed to investigate and call witnesses must be supported by an affidavit from the proposed witness" in first-stage postconviction proceedings.). As such, defendant's petition fails to overcome the presumption that Fuller's cross-examination of Mason and Harris was trial strategy.

¶ 31 Moreover, defendant's petition fails to explain why the fact that Mason and Harris had their charges reduced or dropped in exchange for their testimony against defendant was a basis for excluding their testimony. See *People v. Jackson*, 145 Ill. App. 3d 626, 639 (1986) ("The existence of a promise of leniency goes to the credibility of the witness and his testimony, not to its admissibility."). Here, both witnesses admitted that they received favorable treatment in exchange

11

for testifying against defendant. As such, their credibility was a matter for the jury to resolve. *People v. Wilson*, 66 Ill. 2d 346, 349 (1977) ("[W]hether accomplice testimony, corroborated or uncorroborated, is a satisfactory basis for conviction goes to the weight of the evidence and is, therefore, in the province of the jury or the court."). Accordingly, we cannot hold that the trial court's finding that these claims of ineffective assistance failed to show any error by trial counsel was erroneous.

¶ 32 Defendant's second contention was that trial counsel, and the trial court, violated his statutory speedy-trial rights. If an incarcerated defendant is not tried within 120 days (excluding delays attributable to the defense), he or she must be discharged from custody and the charges dismissed. *People v. Mayfield*, 2023 IL 128092, ¶ 19 (citing 725 ILCS 5/103-5(a) (West 2020)). A delay is "considered to be agreed to by the defendant unless he or she objects to the delay by making a written demand for trial or an oral demand for trial on the record." 725 ILCS 5/103-5(a) (West 2020). "An agreed continuance tolls the speedy trial period ***." *People v. Wade*, 2013 IL App (1st) 112547, ¶ 26; see also *People v. Ingram*, 2020 IL App (2d) 180353, ¶ 16 ("Generally, a defense counsel's express agreement to a continuance may be considered an affirmative act contributing to a delay attributable to the defendant.").

¶ 33 Here, defendant filed two speedy-trial demands, neither of which was adopted by his defense counsel. Further, defendant did not object when his second appointed attorney continued to request continuances, even after the court asked if there were any other issues that needed addressed at the pretrial hearings. Generally, an attorney is presumed to act on his client's authorization. *People v. Bowman*, 138 Ill. 2d 131, 142 (1990). A defendant who wishes to repudiate his attorney's failure to assert his speedy-trial rights must promptly inform the trial court. *Id.* at 143. A failure to repudiate the act "effectively ratifie[s] the act." *Id.* Thus, the court correctly found

that defendant did not properly assert his speedy-trial rights and we cannot find that defendant's trial counsel was ineffective.

¶ 34    Defendant's final contention of ineffective assistance was that trial counsel failed to object to the giving of an instruction for first degree murder. This contention has no merit. " 'The legal effect of an affirmative defense is to admit that the acts occurred, but to deny responsibility.' " *People v. Brant*, 394 Ill. App. 3d 663, 671 (2009) (quoting *People v. Podhrasky*, 197 Ill. App. 3d 349, 352 (1990)). Thus, defendant could not successfully claim self-defense without admitting the underlying offense of first degree murder.

¶ 35    Indeed, defendant admitted shooting Gilmore. While he also said that he believed Gilmore had a gun, the jury was free to either accept or reject his testimony. "It is the jury's prerogative to weigh testimony in light of its discrepancies and conflicts to accept or reject as much or as little of the witnesses' testimony as it pleases, and to draw reasonable inferences from that testimony." *People v. Daniels*, 264 Ill. App. 3d 465, 470 (1992). Here, defendant's testimony conflicted with that provided by Mason and Harris, who testified to a series of events from which the jury could infer that defendant went looking for Gilmore after they left the meat market. Defendant was admittedly angry with Gilmore because he owed him money.

¶ 36    "Both parties are entitled to instructions pertaining to their separate theories of the case; however, evidence must be presented on a particular theory before an instruction may be submitted." *People v. Brown*, 406 Ill. App. 3d 1068, 1079 (2011). "Where some evidence supports the instruction, the circuit court's failure to give the instruction constitutes an abuse of discretion." *People v. Castillo*, 188 Ill. 2d 536, 540 (1999). Here, the testimony from Mason and Harris was sufficient to warrant a jury instruction for first degree murder and this court has already found that the evidence was sufficient to support defendant's conviction of first degree murder. *Gardner*,

13

2021 IL App (5th) 190421-U, ¶ 47. Thus, we find neither error nor prejudice stemming from trial counsel's failure to object to the first degree murder instruction.

¶ 37　　Defendant also contended that appellate counsel was ineffective for failing to raise the two of the foregoing errors. However, as we have found that none of the issues regarding defendant's trial counsel has merit, it follows that appellate counsel cannot be ineffective for failing to raise them on direct appeal. See *People v. Easley*, 192 Ill. 2d 307, 329 (2000) ("[U]nless the underlying issues are meritorious, defendant has suffered no prejudice from counsel's failure to raise them on appeal."). Such principle is equally relevant to defendant's argument that the combination of the above issues constituted cumulative error. Given that none of the individual actions complained of was error, no cumulative error can be found.

¶ 38　　Finally, OSAD argues that no reasonably meritorious argument can be made claiming the circuit court committed procedural error in dismissing defendant's petition. A circuit court may summarily dismiss a postconviction petition within 90 days after its filing. 725 ILCS 5/122-2.1(a) (West 2020). In doing so, the court, independently reviews the petition, "taking the allegations as true." *Hodges*, 234 Ill. 2d at 10. Here, the circuit clerk filed defendant's petition on January 4, 2023. The court summarily dismissed it on March 20, 2023, well within the 90-day limit, without input from the State. Therefore, the circuit court followed proper procedures.

¶ 39　　　　　　　　　　　　　　CONCLUSION

¶ 40　　As this appeal presents no issue of arguable merit, we grant OSAD leave to withdraw and affirm the circuit court's judgment.

¶ 41　　Motion granted; judgment affirmed.