2022 IL App (2d) 210514-U
No. 2-21-0514
Order filed September 21, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 19 CF 2261 |
| DIEGO MASCOTE, | ) ) ) | Honorable Salvatore LoPiccolo Jr., |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE McLAREN delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*: The trial court did not err in denying defendant's request to introduce his statements during police interrogation denying that he had consumed alcohol before being stopped by the police. Contrary to defendant's characterization, the previously-admitted portions of his interrogation were not misleading on whether he had consumed alcohol. Therefore, the proffered statements were not admissible under the completeness doctrine. Moreover, any error in excluding the statements was harmless.

¶ 2    Defendant, Diego Mascote, appeals his conviction, following a jury trial, of aggravated driving under the influence while license was suspended (DUI) (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2018)). Defendant contends that the trial court abused its discretion in finding that

certain statements defendant made during police interrogation were inadmissible hearsay and not subject to admission under the completeness doctrine. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4      On April 27, 2021, defendant was indicted on two counts of aggravated DUI (*id.* § 11-501(a)(2), (d)(1)(G) (suspended driver's license), (d)(1)(I) (no liability insurance)), one count of resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)), and one count of driving while his license was suspended (625 ILCS 5/6-303(a) (West 2018)). The charges stemmed from an incident on November 20, 2019.

¶ 5      The following relevant evidence was presented at defendant's jury trial. Victor Mayan testified that, on November 10, 2019, at about 4:40 p.m., he was driving north on Liberty Street in Elgin in a 2009 blue Nissan Versa with his fiancé and daughter when he noticed a vehicle with bright headlights approach his vehicle from behind. The vehicle was traveling "really close" to Mayan's vehicle and "swaying back and forth, like maybe indicating it wanted to pass or wanted [Mayan] to get out of the way altogether." The vehicle was behind Mayan's vehicle for about one block and then moved into the southbound lane in an attempt to pass Mayan's vehicle. However, because of oncoming traffic in the southbound lane, there was not enough time for the vehicle to pass Mayan's vehicle. The vehicle returned to the northbound lane and, in doing so, "clipped the left quarter panel of [Mayan's] car."

¶ 6      Mayan testified that, after the collision, the vehicle "got in front of" Mayan's vehicle. The vehicle made a very brief stop and then turned right on Bent Street. Mayan followed it. Mayan's fiancé took photographs of the vehicle using her cellphone. The photographs, which showed the vehicle and its license plate, were admitted into evidence. Mayan's fiancé also called 911 and provided the license plate number to the operator. The vehicle pulled over and the driver waved

for Mayan to pass. Mayan did not pass. The vehicle then proceeded to make a U-turn. As it did so, Mayan was able to see the driver through the vehicle's tinted windows. He described the driver as a male with a light complexion who was either white or Hispanic. He had facial hair and wore a dark baseball cap. Mayan remained in the area of Liberty Street and Bent Street until the police arrived. Mayan then exited his vehicle and observed damage to the rear driver's side of his vehicle.

¶ 7 Elgin police officer Raul Lara testified that, on November 10, 2019, at about 4:43 p.m., he responded to a dispatch regarding a hit-and-run in the vicinity of Liberty Street and Bent Street. He was given the license plate number for the suspected vehicle. After running the license plate number through his onboard computer, he headed to the area of College Street and North Street in Elgin. While on the way, he encountered the suspected vehicle and followed it. Lara intended to conduct a traffic stop of the vehicle and turned on his squad car's flashing overhead lights. The vehicle did not stop. Lara pursued the vehicle, which eventually turned into a residential driveway. The driver, wearing a black hooded sweatshirt and baseball hat, exited the vehicle and ran towards the front of the vehicle. Lara identified defendant in court as the driver. Lara chased defendant, calling him by name and telling him to stop. Lara caught up with defendant as he ran onto the porch of the house next door to where he parked his vehicle. A struggle ensued as Lara told defendant that he was under arrest and attempted to handcuff him. Defendant opened the door, and the struggle continued into the kitchen, where defendant was eventually taken into custody. Defendant was placed in a transport van and taken to the police station.

¶ 8 Lara testified that, as he interacted with defendant, he noticed a strong odor of alcohol emanating from defendant's mouth. He had "slurred or mumbled" speech and repeated the same things over and over. Lara also observed that defendant had facial hair.

¶ 9    Lara testified that his body camera and his squad car's dashboard camera recorded his interaction with defendant. The videos were entered into evidence and played for the jury. Also admitted into evidence were still photographs from the dashcam video depicting the vehicle's license plate number and defendant as he exited the vehicle and fled.

¶ 10    Lara testified that after defendant was taken into custody, he searched defendant's vehicle. Lara located an open and partially-full 12-ounce can of Modelo beer in the center console of defendant's vehicle. Lara also located an unopened can of Modelo beer on the floorboard behind the driver's seat and an unopened can of Corona Fresca on the floorboard of the front passenger seat. Lara identified the cans of alcohol that he recovered, and they were admitted into evidence. A video of the search, taken with Lara's bodycam, was admitted into evidence and played for the jury. Lara also took photographs of the search using his cellphone, but, due to an error, they were not preserved. Lara also observed blue transfer paint on the front passenger's side bumper of defendant's vehicle.

¶ 11    Lara testified that he arrived at the police station at about 6:43 p.m. Defendant was being held in a padded cell. Defendant was not yelling or screaming but appeared calm. Defendant was escorted to an interview room. Defendant waived his *Miranda* rights (see *Miranda v. Arizona*, 384 U.S. 436 (1966)) and spoke with Lara and Elgin police officer Robert Henke. Lara testified that, during the interview, from about two to three feet away, he could smell a "fairly strong" odor of alcohol emanating from defendant's mouth. Lara testified as follows concerning his interview with defendant.

"Q. Did you ask the defendant, how much have you had to drink today?

A. Yes.

Q. Did the defendant give you the following response: 'I haven't had much, I hadn't had shit'?

A. Yes.

Q. After he gave you that response, did you ask the defendant what's not much, two to three beers?

A. Yes.

Q. Did he give the following response: 'I didn't have shit, I didn't have shit, I'm just irritated, I'm just pissed off.'

A. Yes.

Q. At the time he was giving you those responses, did you smell the odor of alcohol on his breath?

A. Yes."

At about 7:25 p.m., Lara read defendant the "Warning to Motorist" form verbatim, observed defendant for 20 minutes, and then asked defendant to submit to a Breathalyzer test. Defendant refused.

¶ 12    Lara testified that, in his opinion, defendant was under the influence of alcohol. His opinion was based on (1) the smell of alcohol on defendant's breath, (2) the open alcohol containers located in defendant's vehicle, (3) defendant's demeanor toward Lara and other officers, (4) defendant's slurred and mumbled speech, and (5) the change in defendant's attitude and demeanor over time. The State introduced into evidence a certified copy of defendant's driver's abstract, showing that defendant was serving a statutory summary suspension on November 10, 2019.

¶ 13     Before cross-examining Lara, defense counsel invoked the completeness doctrine and asked to present additional portions of Lara's interview of defendant regarding defendant's alcohol consumption. Counsel described those additional portions as follows:

"MS. WILLETT [(DEFENSE COUNSEL)]: So on the tape, Officer Lara asked [defendant] how much he had to drink.

The answer was, 'I haven't had much. I haven't had shit.'

Officer Lara then says to him, 'What is not much? Like three? Two or three beers? Or like fucking'—

[Defendant] responds, 'I haven't had shit and says like everything I am just pissed off.'

Later on in the interview, Officer Henke asked, 'When was your last drink? You said you had a little bit of alcohol.'

[Defendant] replies, 'No. I wasn't even drinking.'

Officer Lara says to him, 'You had a beer in the car.'

[Defendant] responds, 'It wasn't open.'

Officer Lara says, 'Yes, it was.'

[Defendant] then says, 'Was it?'

Officer Lara says, 'Were you drinking that?

[Defendant] replied, 'No.' "

The trial court ruled that defendant's additional statements were inadmissible hearsay and not admissible under the completeness doctrine.

¶ 14     Henke testified that he was also dispatched to Liberty Street and Bent Street. He observed damage to the rear quarter panel of Mayan's vehicle and "[d]ents and paint transfer" to the front

fender of defendant's vehicle. The paint color on defendant's vehicle matched the color of Mayan's vehicle. From about three to four feet away, Henke could smell the odor of alcohol emanating from defendant. Henke later assisted Lara with his interview of defendant. During the interview, Henke could smell a "strong" or "significant" odor of alcohol on defendant. Henke opined that defendant was intoxicated, based on defendant's behavior, inability to concentrate, slurred speech, and bloodshot and watery eyes. Henke also testified that defendant's demeanor had changed from when Henke first encountered him on the scene; in particular, defendant had calmed down "[s]ignificantly."

¶ 15    The State rested, and defendant moved for a directed verdict. The trial court granted defendant's motion as to count II, finding that the State failed to present evidence that defendant was operating an uninsured vehicle. The court denied the motion as to the remaining counts. Defendant presented no evidence.

¶ 16    The jury found defendant guilty of aggravated DUI while license was suspended (625 ILCS 5/11-501(a)(2), (d)(1)(G) (West 2018)), resisting or obstructing a peace officer (720 ILCS 5/31-1(a) (West 2018)), and driving while his license was suspended (625 ILCS 5/6-303(a) (West 2018)).

¶ 17    Defendant filed a motion for a new trial. He argued, *inter alia*, that his later statements during the police interview that he had not been drinking should have been admitted under the completeness doctrine because his initial statements were misleading on whether he had been drinking. The trial court disagreed. The court found that it was clear from the plain meaning of defendant's admitted statement—"I didn't have shit"—that defendant's "last word was he hadn't drank anything." The trial court denied defendant's motion.

¶ 18    Following a sentencing hearing, the trial court sentenced defendant to 30 months in prison for aggravated DUI and 180 days in jail for resisting or obstructing a peace officer. The court entered a judgment of conviction for driving with a suspended license but imposed no sentence.

¶ 19    This timely appeal followed.

¶ 20                                II. ANALYSIS

¶ 21    Defendant contends that the trial court abused its discretion in ruling that defendant's additional statements during the police interrogation denying his alcohol consumption were inadmissible hearsay and not subject to admission under the completeness doctrine. According to defendant, "the evidence was necessary to place statements from the interrogation introduced earlier by the State in context and prevent the jury from being misled." The State responds that the admitted statements were sufficiently clear and required no clarification. We agree with the State.

¶ 22    The admission of evidence at trial is within the trial court's sound discretion. *People v. Montano*, 2017 IL App (2d) 140326, ¶ 74. We will not reverse the trial court's ruling unless it abused that discretion. *Id.* A trial court abuses its discretion where its ruling is arbitrary, fanciful, or unreasonable, where no reasonable person would take the view adopted by the trial court, or where its ruling rests on an error of law. *People v. Olsen*, 2015 IL App (2d) 140267, ¶ 11.

¶ 23    Generally, "[s]elf-serving statements by an accused are inadmissible hearsay." *People v. Patterson*, 154 Ill. 2d 414, 452 (1992). "Such statements are considered inadmissible hearsay because their relevance depends upon the truth of the matter asserted or the declarant's belief in the truth or falsity of the matter asserted." *Id.* "The rationale for exclusion is that testimony regarding out-of-court statements made by a defendant after commission of a crime is not competent because the defendant had a motive to fabricate favorable testimony relating to his innocence." *People v. Vanda*, 111 Ill. App. 3d 551, 558 (1982). However, such statements may be

admissible if a hearsay exception applies. See *Patterson*, 154 Ill. 2d at 452-454 (analyzing various exceptions). Here, defendant argues that the completeness doctrine affords an exception to the hearsay bar for his additional statements denying that he had anything to drink.

¶ 24    Under the completeness doctrine, " 'where a conversation is related by a witness, the opposing party has a right to bring out all of the conversation on cross-examination.' " *People v. Weaver*, 92 Ill. 2d 545, 556 (1982) (quoting *People v. Nakutin*, 364 Ill. 563, 571 (1936)). However, the exception is not without limitation. "The mere mention of a conversation or statement does not entitle the opponent to bring out its content." *Patterson*, 154 Ill. 2d at 454. To be admissible, the statement must be necessary to (1) prevent the trier of fact from being misled, (2) place the omitted portion in the proper context to convey a true and correct meaning, or (3) shed light on the meaning of the evidence already received. *People v. Craigen*, 2013 IL App (2d) 111300, ¶ 45.

¶ 25    However, the evidence already presented "must actually be misleading." *People v. Caffey*, 205 Ill. 2d 52, 90-93 (2001). " 'A defendant has no right to introduce portions of a statement which are not necessary to enable the jury to properly evaluate the portions introduced by the State.' " *Id.* at 91 (quoting *People v. Olinger*, 112 Ill. 2d 324, 338 (1986)). The purpose of the completeness doctrine is not to assist a defendant in having all helpful evidence admitted, but only "to correct the misleading nature of a *** recorded statement or a portion thereof that has been taken out of context or is difficult to understand on its own." See *Craigen*, 2013 IL App (2d) 111300, ¶ 48. Where a statement is not misleading and does not cause prejudice, the defendant is not entitled to the admission of other evidence under the completeness doctrine. *Caffey*, 205 Ill. 2d at 91.

¶ 26    Here, the trial court found that the admitted statements were not misleading. We agree. Lara testified that, when he asked defendant "how much [he] had to drink today," defendant responded, " 'I haven't had much, I hadn't had shit.' " Defendant argues that defendant's

statements were "confusing and contradictory" because defendant told Lara both that he had a small amount of alcohol to drink and that he had nothing to drink. To be sure, defendant's initial statements were contradictory. However, immediately after defendant made those statements, Lara asked defendant, "what's not much, two to three beers?" Defendant responded, " 'I didn't have shit, I didn't have shit, I'm just irritated, I'm just pissed off.' " Thus, defendant's response clarified any contradiction, because, as the trial court found, his subsequent statements were a clear denial of alcohol consumption. Therefore, the trial court did not abuse its discretion in denying the admission of defendant's subsequent statements that he " 'wasn't even drinking' " and, specifically, that he was not drinking the open can of beer in his car. Those statements were not necessary to prevent the jurors from being misled.

¶ 27    Moreover, even if defendant's subsequent denials of alcohol consumption were admissible, any error in excluding the denials was harmless, because they were merely cumulative of his statement that he " 'didn't have shit.' " See *Caffey*, 205 Ill. 2d at 92 (error in the exclusion of hearsay testimony is harmless where the excluded evidence is cumulative of other evidence).

¶ 28    Defendant argues that the trial court's exercise of discretion was "severely compromised" because the court "badly misapprehended the testimony" and "operated under a mistake of fact" when it denied admission of the proffered statements. According to defendant, at the time of its ruling, the court did not recall that Lara testified that defendant initially stated, " 'I haven't had much. I haven't had shit,' " before defendant later stated that "he did not have shit." However, immediately after the court made its ruling, defense counsel reviewed the testimony with the court. Thereafter, the court stated, "I don't remember it being that way, *but I am keeping my ruling the same*." (Emphasis added.) Thus, even after counsel corrected the court's understanding of the testimony, the court made clear that it was standing on its ruling. Moreover, there is no question

that the court was fully aware of the testimony when it revisited the issue at the hearing on defendant's motion for a new trial; defendant presented the testimony in his motion and made extensive arguments to the court. Accordingly, any misimpression that the court may have had was rectified both immediately after it ruled and again during the proceedings on the motion for a new trial.

¶ 29                                  III. CONCLUSION

¶ 30    For the reasons stated, we affirm the judgment of the circuit court of Kane County.

¶ 31    Affirmed.